269 N.J. Super. 300 (1993)
635 A.2d 539
MADELYN C. RAMPOLLA, PLAINTIFF-APPELLANT,
v.
RONALD M. RAMPOLLA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1993.
Decided December 22, 1993.
*301 Before Judges SHEBELL, LONG and LANDAU.
Pellettieri, Rabstein and Altman, attorneys for appellant (Deborah A. Rose, on the brief).
Jules S. Littman, attorney for respondent (Jules S. Littman, of counsel and on the brief; Barbara A. Newmeyer, on the brief).
The opinion of the Court was delivered by LONG, J.A.D.
In this post-judgment matrimonial action, Madelyn C. Rampolla, appeals from the trial judge's denial of her motion to relocate to Staten Island, New York with the two children from her marriage to her former husband, defendant, Ronald M. Rampolla.
The parties were married on April 13, 1980, and two children were born of the marriage: Christopher, on April 18, 1981, and Marc, on July 13, 1984. In 1988, the parties separated and they were divorced on April 4, 1989 by dual judgment. The judgment incorporated a settlement agreement which resolved all dissolution issues.
Pursuant to the agreement, the parties retained "joint legal custody of Christopher and Marc" and "shared residential custody" of the children. The parties were to exercise custodial periods of time with the children as follows:
(A) The Father shall have residential custody of Marc and Christopher during the first three (3) weekends of each month. The Mother shall have residential custody of Marc and Christopher during the fourth weekend of each month.

*302 (B) In the event that a month has five weekends, the parents shall alternate residential custody, with the Father having the first such weekend.
(C) Marc shall be with his Father on Tuesday evenings and Thursday evenings from 6:30 p.m. until 8:30 p.m. In the event that Marc does not have school the following day, he shall remain with the Father overnight.
(D) During the period of time that Christopher is attending school the Father shall have residential custody of Christopher from Tuesday evenings at 6:30 p.m. until Wednesday mornings and on Thursday evenings from 6:30 p.m. until 8:30 p.m. and during the summer and school vacations, on Thursday evenings until Friday mornings.
(E) During the summer and school vacations Marc shall be with the Mother from Friday morning until Friday evening.
(F) The principal abode of Marc shall be with the father and the principal abode of Christopher shall be with his mother.
(G) It is further understood that the custodial arrangements set forth in this Agreement are guides which are meant to be altered or amended in the best interests of the children.
The parties shared or alternated residential custody of the children during holidays and were entitled to "extended time with the children" during all periods of time in which the children were not attending school during the summer.
Regarding the future, the agreement stated:
It is the intention of both parents that they intend to live in as close proximity to each other in order to maximize the amount of contact that each of the children shall be able to have with their parents.
* * * * * * * *
In the event that either parent seeks to relocate their residence such that the relocation will impair and frustrate the intent of the shared residential custody of the children and to preclude its implementation, then that parent shall consult with the other parent. If the parties are unable to reach a mutual agreement with regard to said relocation, either party may file an application with the Court.
In September 1991, apparently in anticipation of a move by plaintiff, defendant filed an order to show cause seeking temporary residential custody of the children and the right to enroll them in the Ewing Township school system. In his certification in support of the order, defendant indicated his desire to become the primary residential custodian of the children and asked for a probation investigation pursuant to R. 5:8-3. Plaintiff filed an order to show cause to be permitted to remove the children to reside in Staten Island and to enroll them in school there. Immediate *303 relief was denied but an Order for a plenary hearing on plaintiff's application for relocation and defendant's application for primary residential custody issued. A plenary hearing was held on five dates between March and July 1992.
At the time of the plenary hearing, the terms and conditions of the shared custodial arrangement had been modified so that during the school year both children remained overnight with defendant on Tuesday and Thursday nights. Moreover, during the summer, defendant would schedule time off from work to spend "days off with the children" on Tuesdays and Thursdays. Additionally, defendant would work half-days in the summer so as to be able to pick the children up in the early afternoon.
After separation, plaintiff rented living space in townhouse or condominium units in Mercer County. Defendant, however, remained in the former marital home which is located in Ewing Township and was purchased in late 1986. Defendant acquired plaintiff's interest in the home during the equitable distribution of the marital assets, in order to maintain a stable environment for the two children in spite of the parties' marital discord. The children have strong ties to the neighborhood as the house serves as a focal point for neighborhood activities.
Complying with the intent and spirit of the settlement agreement, the parties have lived in close proximity to each other since their divorce and have maintained a flexible and civil relationship regarding all aspects of their interaction with the children. The trial judge noted:
Both parents have cooperated with one another ... and, are successfully and, I mean successfully, co-parenting these children. Close proximity of the parties of the children has made this possible.
Defendant, a Connecticut native, is employed by Standard Chartered Bank in New York City and commutes to Lower Manhattan daily. He lived in northern New Jersey for ten years prior to the marriage. His "very long commute" takes on average one hour and forty-five minutes each way, often longer. Plaintiff, a Staten Island, New York native has not been employed because child care *304 arrangements including vacations and sick days were difficult for her to make. Plaintiff remarried on November 26, 1991 and her current spouse, Carmella Leonardi, a Staten Island resident, is employed by the Port Authority of New York at John F. Kennedy Airport as a "watch engineer." Leonardi works various shifts dictated by a six week cycle, which he described as follows:
Some days are eight days straight. Some days are seven days straight. Some days are two days. Like a typical week would be  in a typical six week period, one week is Monday through Friday from seven to three. Another time period is you start nights, a Thursday night and you're finished Thursday morning of the following week. Another week is you work eight days straight. You know, sometimes you work two days. You work a forty hour week within a six week period. And, if overtime arises 
Leonardi commutes from his parents' Staten Island home to work in approximately one hour whereas the commute from plaintiff's Mercer County residence requires an additional forty-five minutes to one hour, depending on traffic. Plaintiff and her new husband have large extended families in Staten Island. She testified that this support network would allow her to work if she relocated with the children in Staten Island.
Both plaintiff and defendant actively participate in the rearing of their children. Defendant assists with coaching duties for his children during their participation in soccer, basketball and baseball. During the school year, both parties assist the children with their homework on week nights and attend school functions. Likewise, plaintiff participates in the children's sporting activities by frequently providing transportation as well as attending games. Moreover, plaintiff provides the majority of the children's meals during a regular week and makes all the arrangements for their day-to-day living including religious instructions, medical needs and non-school or sports activities. On nights when the children stay over with defendant, he returns them to their mother early in the morning to be bathed, dressed and fed before school.
The testimony and report of Stanley Rosner, Ph.D., on behalf of plaintiff, indicated that the children would not be harmed by the move. His evaluation of the children included both objective and subjective testing as well as interviews with each child. His *305 findings indicated that the children depended primarily on their mother for the majority of their support except for sports activities. Dr. Rosner concluded that the children still have a fantasy of their parents reuniting. He also concluded that the children are sufficiently well adjusted so as to preclude them from being emotionally harmed or from having the bond with their father broken in the event of a move from New Jersey to Staten Island. In his opinion, if the parties were willing to continue to cooperate in arranging a new schedule, a change in the manner and place of defendant-husband's custodial time to the extent that proposals have been presented, would not negatively affect the children.
Jeffrey Mandell, Ed.D., testified on behalf of defendant. Dr. Mandel concluded that each child was active and comfortable within his environment and should not be moved. In his opinion, moves are always harmful to the child's best interest, even in an intact family. His conclusions were based upon his tests of two years earlier and the interviews with the children. He took no notes and had no records of the children's statements.
In a supplemental report issued in January 1992, Dr. Mandell reasserted that "the children's environment should change as little as possible." Dr. Mandell agreed that the children's bond was so strong with their father that if a reasonable alternative custodial situation during the week could be established, they would not suffer.
The trial judge also interviewed the children in chambers and reported their unequivocal opposition to relocation. She considered this in reaching her decision although she cautioned that "if I had walked out of that interview with no message at all[,] [m]y decision would be exactly the same."
Applying N.J.S.A. 9:2-2 and Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988), the trial judge found that plaintiff had demonstrated good faith reasons for the relocation to Staten Island and that she was not attempting to frustrate defendant's visitation rights. She also found that the present custodial arrangements would be substantially changed by relocation in that:

*306 1. The children will only be available to the Defendant on weekends, during the summers and during Christmas and spring recess.
2. The present weekday visitation with the Defendant will be eliminated or drastically modified. The overnight visitation on Tuesday and Thursday evening will be eliminated. The children, if they relocate to Staten Island, will attend school in Staten Island. Accordingly, weekday visitation, overnight visitation will be eliminated. Weekday visitation without an overnight will be extremely impracticable. Mr. Rampolla would be required to visit with the children in Staten Island after working all day. Remain in Staten Island for a brief few hours and then, return to New Jersey. The advantages, or rather disadvantages of this type of an arrangement are obvious.
3. It would be very difficult to enforce the present weekend visitation schedule. The children, once relocated to Staten Island, will find it more difficult to leave their home each weekend to travel to Ewing Township, in Mercer County. Accordingly, the Defendant's weekend visitation schedule would be greatly compromised. The idea of Mr. Rampolla leaving his job and going to Staten Island two evenings a week and spending time with the Rampolla children in a diner or a house or an alternate location is a far cry from what he enjoys presently.
The judge then considered whether relocation to Staten Island was in the best interests of Christopher and Marc. In determining that relocation was inimical to their best interests, the trial judge opined:
1. A strong bond exists between both parents. And, the children will be severely strained by the separation of the children and Mr. Rampolla, should the children move to Staten Island.
2. Both parents have cooperated with one another under their Property Settlement Agreement and, are successfully and, I mean successfully, co-parenting these children. Close proximity of the parties of the children has made this possible. As explained below, the unique relationship contemplated by the Property Settlement Agreement would be changed by the relocation. The children will suffer from a move. These facts, together with a frequent, regular contact with the children, that Mr. Rampolla is allowed under the Property Settlement Agreement, as set forth earlier, and the regular and frequent contact the Defendant has with the children make this arrangement a truly shared custody agreement.
In this case, Mr. Rampolla retained the former marital home to insure stability for the children. In fact, Mr. Rampolla purchased the Plaintiff's interest in the marital home and has continued to maintain that residence as a single parent. The Defendant attends school conferences, participates in sporting events and, spends quality time with the children. All of these activities and efforts suggest the Defendant as well as Plaintiff are responsible for the fact that these children are healthy and appear to have coped well when their parents separated in divorce.
To exclude Defendant from his shared custody, and to prevent the regular and frequent contact between the children and their father will deprive these children *307 of the important benefits derived from the co-parenting efforts of these two people, which efforts are fostered by the Property Settlement Agreement.
The close relationship between the Defendant and his children, which is built upon the regular frequent contact encouraged by the Property Settlement Agreement can not be fostered or preserved with a limited visitation schedule as proposed.
On these findings, she ruled that the move was not in the best interests of the children and precluded it. She added:
The Property Settlement Agreement in the case at bar sets forth the shared custody agreement between the parties. However, almost from the inception, the parties have modified and expanded by consent and, without judicial intervention the time spent with Mr. Rampolla and the children during the weekday. This modification is consistent with Paragraph G, Page 4 of the Property Settlement Agreement which provides, [in] pertinent part that, "[t]he custodial arrangement set forth in this agreement are guides which are meant to be altered or amended in the best interest of the children."
Clearly, the current schedule is in the best interest of the children. Accordingly, the Property Settlement Agreement is modified to include the present weekday shared custody arrangement.
I would also indicate for the record that's been the policy. That's been the history throughout the entire agreement. When the agreement was entered into, Mark was much younger than he is now. And, as I recall, the overnight visitation with Mark in the beginning was limited. But, this Court will modify the weekday visitation plan to be consistent with the practice of the parties, which is exactly what's been happening almost from the beginning.
The judge entered an order which stated:
That the application of the plaintiff, Madelyn G. Rampolla (now Leonardi), to relocate the minor children of the marriage to Staten Island, New York is denied.
That the Property Settlement Agreement incorporated into the Final Judgment of Divorce is amended to reflect the current practice of the minor children residing with their father overnight on Tuesday and Thursday evenings until the following mornings, but in all further respects the Agreement incorporated into the Judgment shall remain in full force and effect.
The effect of this order was to deny both plaintiff's relocation motion and defendant's application for primary residential custody.
Only plaintiff appeals. We reverse. We have carefully reviewed this record and have concluded that the trial judge failed to address an issue which is crucial to the disposition of this case: whether defendant could relocate as a method of ensuring the vitality of the shared custody arrangement. In Murnane v. *308 Murnane, 229 N.J. Super. 520, 552 A.2d 194 (App.Div. 1989), we identified this as an important factor in a Holder calculus.
Furthermore, in view of the Holder court's emphasis on the parity of men and women, in seeking to determine whether the move can be made without substantial detriment to Andre's interests and Mr. Murnane's visitation rights, the trial court should also weigh the burden which Mr. Murnane would suffer if he is forced to relocate in order to remain close to Andre against the burden which Ms. Scott will have to bear if she is forced to remain in East Stroudsburg in order to retain custody.

[229 N.J. Super. at 531, 552 A.2d 194.]
This is not just a matter of gender parity. What it does is to offer an alternative to the all or nothing outcome which often results in a Holder case. Instead of the status quo (regular contact or shared custody) being pitted against the move, the possibility of replicating the status quo in another location becomes a viable alternative with concomitant benefit to all parties. Realistically, in most cases, both parties will not have equal ability to relocate. However, there will be cases in which the party resisting the move has the flexibility to live elsewhere. For example, a person who runs a home business or one who travels long distances or is licensed to practice a profession in more than one state might well be able to move his or her base of operations. What is important is that this inquiry should be made in every Holder case. It is particularly appropriate in this case because of the facts and because nothing in the property settlement agreement suggests that the parties intended to be chained to Mercer County forever. Indeed, the words of the settlement agreement reveal that the parties bargained for proximity and shared custody, not necessarily proximity and shared custody in Mercer County and that they understood that, in the future, a move might be required. The agreement is devoid of reference to location, focusing only on maximizing the children's connection to both parents:
It is the intention of both parents that they intend to live in as close proximity to each other in order to maximize the amount of contact that each of the children shall be able to have with their parents.
* * * * * * * *

*309 In the event that either parent seeks to relocate their residence such that the relocation will impair and frustrate the intent of the shared residential custody of the children and to preclude its implementation, then that parent shall consult with the other parent. If the parties are unable to reach a mutual agreement with regard to said relocation, either party may file an application with the Court.
According to this record, apparently neither plaintiff nor defendant has any deep roots in New Jersey. He comes from Connecticut, she from Staten Island, New York. Neither has family here. Defendant travels an average of one hour and forty-five minutes (one way) to his job in lower Manhattan (nearly four hours a day of commutation). Plaintiff's current spouse is a Staten Islander. Both plaintiff and her new husband have extended families in Staten Island available for interaction with the children and child care help. Plaintiff could work outside the home with this safety net. Her new husband works shifts at J.F.K. Airport, an hour from Staten Island. If he and plaintiff were to move here, his commute would increase by almost an hour. If plaintiff were to move away without approval, she would lose her fundamental relationship with the children for whom she appears to be the primary caretaker. In sum, the trial judge should have considered whether the cooperative relationship between plaintiff and defendant and the best interests of the children could take place at an alternative location with less stringent consequences to both parents. Murnane, 229 N.J. Super. at 531, 552 A.2d 194.
It may be that more testimony will be required to resolve this issue in light of the fact that the judge apparently did not consider it to be a subject for inquiry in the hearing below. We thus reverse and remand the matter to her for such proceedings as she deems necessary to reach a determination on plaintiff's Holder application in light of her findings on the issue to which we have adverted.
Reversed and remanded.