JANE ARONSON FORD *v.* AARON FORD

Schaller, Mihalakos and Dranginis, Js.

Argued October 16, 2001—officially released February 12, 2002

*Samuel V. Schoonmaker IV*, with whom was *Samuel V. Schoonmaker III*, for the appellant (defendant).

*Gary I. Cohen*, with whom was *Marci Finkelstein*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. In this dissolution of marriage action, the defendant, Aaron Ford, appeals from the judgment of the trial court awarding primary physical custody of the parties' minor child to the plaintiff, Jane Aronson Ford, and permitting the plaintiff to relocate with the minor child to Massachusetts. On appeal, the defendant claims that the court (1) improperly allowed the plaintiff to relocate with their minor child to Massachusetts because it failed to apply the standards governing relocation issues as set forth by our Supreme Court in *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998) (en banc), (2) abused its discretion in denying his motion to open the testimony and (3) abused its discretion in issuing the custody, relocation and visitation orders. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. The parties were married in Massachusetts on July 24, 1993. The parties had one child, Joshua, who was born on May 2, 1997. In April, 1998, the parties moved from New York City to Greenwich, where the defendant currently resides. The parties separated on December 24, 1998.

The trial court rendered a judgment dissolving the marriage of the parties on January 3, 2000. At the trial for the dissolution of marriage, the plaintiff expressed her desire to relocate with the child to the Boston area. In dissolving the marriage, the trial court awarded joint legal custody of the parties' minor child. The court, however, granted primary physical custody of the child to the plaintiff and permitted the plaintiff to relocate with the child to Massachusetts. This appeal followed.

I

The defendant presents several challenges to the court's decision to permit the plaintiff to relocate to

Massachusetts with the parties' child, all of which concern the decision of our Supreme Court in *Ireland* v. *Ireland,* supra, 246 Conn. 413.[1] Essentially, the defendant contends that by declining to apply the criteria set forth in *Ireland,* the court used an improper legal standard in permitting the plaintiff to relocate, and, therefore, this court should overturn the trial court's decision. To resolve this claim, the threshold question is whether *Ireland* applies to relocation issues that arise when the initial custody determination is made at a dissolution proceeding.

The following additional facts are relevant to our disposition of this claim. The primary dispute at the proceedings concerned the plaintiff's intention to relocate with the child if granted primary physical custody. After both sides presented evidence, the court granted joint legal custody of the minor child to the parties, awarded primary physical custody to the plaintiff and permitted the plaintiff to relocate with the parties' child to the Boston area.

In allowing the plaintiff to relocate, the court stated: "[W]e are involved with the initial determination of the issue of custody with neither party having been designated the primary physical custodian previously. Although the factors and considerations set forth in the *Ireland* decision were of interest to the court and were utilized by it, this court has not allocated the burden of proof as required in the *Ireland* situation." Rather than applying the *Ireland* factors, the court instead analyzed the plaintiff's request to relocate under the

---

[1] The defendant contends that the court improperly (1) utilized some of the factors set forth in *Ireland,* as opposed to applying *Ireland* in its entirety, (2) declined to impose *Ireland*'s burden shifting scheme and burdens of proof, (3) failed to consider the factors set forth by our Supreme Court in *Ireland* in finding that relocation was in the best interest of the child involved and (4) applied the reasoning in *Ireland* with regard to the new family unit between a custodial parent and child.

best interest of the child standard set forth in General Statutes § 46b-56. The court found that it was in the best interest of the child to permit relocation because of the plaintiff's familial ties and increased job opportunities in Massachusetts, that moving to Massachusetts will improve the plaintiff's and, thus, the child's quality of life, and that the Boston area is of geographic proximity to where the defendant resides in Connecticut such that the defendant will be able to visit his son frequently.

Whether the *Ireland* factors and its burden shifting scheme apply to relocation issues that arise when the initial custody determination is made at a dissolution of marriage proceeding is an issue of first impression before this court and presents a question of law, affording us plenary review over the claim.[2] See *In re Antony B.*, 54 Conn. App. 463, 469, 735 A.2d 893 (1999). Thus, "[w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001).

Prior to our Supreme Court's decision in *Ireland*, the courts utilized the best interest of the child standard, as set forth in § 46b-56 (b), in deciding relocation issues. Section 46b-56 (b) provides in relevant part: "In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . ." Our legislature, however, has not

---

[2] We note that this court in *Azia* v. *DiLascia*, 64 Conn. App. 540, 780 A.2d 992, cert. denied, 258 Conn. 914, 782 A.2d 1241 (2001), was faced with a similar issue. In *Azia*, the defendant claimed that the court improperly failed to consider the *Ireland* factors in deciding which parent should have primary physical custody of the parties' child at the time of dissolution. This court concluded that the trial court in fact had applied all of the *Ireland* requirements in reaching its custody decision and, thus, we "[assumed], without deciding, that such application was proper." Id., 551.

enacted a statute specifically addressing the particular issue of relocation.

In *Ireland* v. *Ireland, supra,* 246 Conn. 428, our Supreme Court articulated a burden shifting scheme to evaluate the best interest of a child in determining postjudgment relocation matters. In furtherance of this scheme, our Supreme Court held that "a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child." Id.

To determine the best interest of the child in a postjudgment relocation matter, our Supreme Court in *Ireland* adopted the factors as enumerated by the New York Court of Appeals in *Tropea* v. *Tropea,* 87 N.Y.2d 727, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996). "These factors are: '[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.' . . . [Another relevant factor is] 'the negative impact, if any, from continued or exacerbated hostility between the custodial and noncustodial parents, and the effect that the move may have on any extended family relationships.' " (Citation omitted.)

*Ireland* v. *Ireland,* supra, 246 Conn. 431–32, quoting *Tropea* v. *Tropea,* supra, 740–41.

The facts in *Ireland* are worth noting and are central to our resolution of this claim. In *Ireland,* the parties' marriage was dissolved in 1990, with the trial court awarding joint custody of the parties' minor son and primary physical custody to the plaintiff mother. Six years later, in 1996, the plaintiff custodial parent sought to relocate to California with her minor child. The trial court and this court denied the custodial parent's request to relocate, concluding that it was not in the best interest of the minor child. In arriving at that decision, the trial court and this court placed the burden of proof as to the child's best interest on the custodial parent. Our Supreme Court granted the plaintiff's petition for certification as to the following two relevant issues: "1. Did the trial court consider the correct criteria for determining the best interests of the child when the parent who was awarded primary physical custody of the child wishes to relocate?"; "2. Was the trial court correct in placing the burden of proof on the custodial parent?" *Ireland* v. *Ireland,* supra, 246 Conn. 417.

It is within the context of a postjudgment proceeding to modify custody that our Supreme Court announced the burden shifting scheme for determining whether to permit a custodial parent to relocate. The Supreme Court's decision was based on its conclusion that the best interests of the child are intertwined with the interests of the postjudgment custodial parent. Id., 422. Our Supreme Court explained that "the prospects awaiting the custodial parent in a new location may be such that the child's best interests would be served by the custodial parent being allowed to pursue those prospects." Id., 423. Moreover, our Supreme Court decided that burden shifting was appropriate at the postjudgment modification juncture because "it should be presumed that when primary physical custody was

entrusted to the custodial parent, the court making that determination considered that parent to be the proper parent to make the day-to-day decisions affecting the welfare of the child. . . . Placing the burden on the noncustodial parent [to demonstrate that relocation is not in the best interest of the child] is consistent with the trust shown by the court in awarding primary physical custody in the first instance to the custodial parent." Id., 426.

In adopting the *Tropea* factors, our Supreme Court further concluded that "an attempt to determine what is best for the child without consideration of what is best for the family unit, with whom the child spends the most significant amount of his or her time, would be an incomplete inquiry. . . . [I]n relocation cases, it is not only proper to consider the interests of the family unit as a whole, including the independent interests of the custodial parent, but it is necessary to a determination of the child's best interests." (Citations omitted.) Id., 430–31.

At a trial for the dissolution of a marriage, unlike at postjudgment proceedings, the interdependence and relationship between a custodial parent and child has presumably not yet been formed. In addition, the interests of the new family unit consisting of a custodial parent and child, which the *Ireland* court also took into account, are similarly not in existence at the time of the dissolution decree. Given that the dissolution decree establishes which parent will retain primary physical custody, the concerns raised in *Ireland* about the "independent interests of the custodial parent" are not fully developed at the time that a marriage is dissolved.

Moreover, in *Ireland*, our Supreme Court adopted additional safeguards in postjudgment relocation matters, which include burden shifting and the *Tropea* factors, because it recognized that the interests and

circumstances of the parties at the postjudgment stage differ from those existing at the time that the marriage is dissolved. At the time of the dissolution decree, the parties are on equal ground. Until a judgment dissolving the marriage is rendered, there is no permanent or final determination of the issue of custody in place.[3] *Hall* v. *Hall*, 186 Conn. 118, 122, 439 A.2d 447 (1982). To apply the *Ireland* burden shifting rationale to custody issues at judgment would unfairly impact the equilibrium of the parties.

Conversely, with postjudgment modifications, the parties are on unequal grounds because the trial court has already rendered judgment as to issues such as custody and visitation. Moreover, postjudgment modification situations arise when one of the parties involved finds the orders in the judgment dissolving the marriage to be unworkable and in need of an alteration due to changes that arose after judgment was rendered. See *Kelly* v. *Kelly*, 54 Conn. App. 50, 55–56, 732 A.2d 808 (1999).

Our sister states of New York and New Jersey, from which our Supreme Court drew guidance in *Ireland*, similarly have concluded that postjudgment relocation matters differ and should be treated differently from relocation issues that arise at the time of dissolution.[4] We, too, find the conclusions and policies of our sister states to be instructive.

---

[3] We note that "[p]endente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because their purpose is extinguished at that time." *Connolly* v. *Connolly*, 191 Conn. 468, 480, 464 A.2d 837 (1983).

[4] Although the *Ireland* court ultimately adopted the factors set forth by the New York court of Appeals in *Tropea* v. *Tropea*, supra, 87 N.Y.2d 740–41, it also examined the criteria set forth by the Superior Court of New Jersey in *D'Onofrio* v. *D'Onofrio*, 144 N.J. Super. 200, 365 A.2d 27, aff'd, 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976), and found that the *Tropea* factors essentially included and supplemented the *D'Onofrio* factors. *Ireland* v. *Ireland*, supra, 246 Conn. 433.

In *Osborne* v. *Osborne*, 266 App. Div. 2d 765, 698 N.Y.S.2d 788 (1999), and *Buell* v. *Buell*, 258 App. Div. 2d 709, 684 N.Y.S.2d 696 (1999), the Appellate Division of the Supreme Court of New York held that although relocation is a pertinent factor to consider in arriving at an initial custody determination, the *Tropea* factors are not implicated at that time.[5] Specifically, the New York court provided in both cases that "this matter cannot properly be characterized as a relocation case since it involves an initial custody determination." *Buell* v. *Buell*, supra, 709; see *Osborne* v. *Osborne*, supra, 765.[6]

In *Baures* v. *Lewis*, 167 N.J. 91, 770 A.2d 214 (2001), the New Jersey Supreme Court discussed how postjudgment relocation matters implicate a different set of issues from those before a trial court in a dissolution proceeding.[7] The *Baures* court stated: "A removal [or postjudgment relocation] case is entirely different from an initial custody determination. When initial custody is decided, either by judicial ruling or by settlement, the ultimate judgment is squarely dependent on what is in the child's best interests. . . . Whoever can better advance the child's interests will be awarded the status of custodial parent.

---

[5] The facts in both *Osborne* and *Buell* resemble those in the present case. *Osborne* and *Buell* both involved a parent who, at the proceeding for the dissolution of the marriage, had sought custody and permission to relocate with the parties' children outside of the state.

[6] In his brief, the defendant cites three New York cases, *Rolls* v. *Rolls*, 243 App. Div. 2d 906, 663 N.Y.S.2d 342 (1997), *Matter of Sara P.* v. *Richard T.*, 175 Misc. 2d 988, 670 N.Y.S.2d 964 (Fam. Ct. 1998), and *Salichs* v. *James*, 268 App. Div. 2d 168, 708 N.Y.S.2d 385 (2000), to support his proposition that New York courts have extended the *Tropea* factors to apply to relocation issues that arise at the initial custody determination. The defendant's reliance on these cases is misplaced. In *Rolls*, the Appellate Division of the Supreme Court of New York held that the *Tropea* factors do not apply at the time of the initial custody determination. Moreover, *Matter of Sara P.* and *Salichs* both involved postjudgment motions to relocate and, thus, are distinguishable from the present case.

[7] The *Baures* case arose out of the plaintiff custodial mother's postjudgment relocation hearing held pursuant to *Rampolla* v. *Rampolla*, 269 N.J. Super. 300, 307–308, 635 A.2d 539 (App. Div. 1993).

"Removal is quite different. In a removal case, the parents' interests take on importance. However, although the parties often do not seem to realize it, the conflict in a removal case is not purely between the parents' needs and desires. Rather, it is a conflict based on the extent to which those needs and desires can be viewed as intertwined with the child's interests. [Prior case law] recognize[s] that subtlety by according special respect to the liberty interests of the custodial parent to seek happiness and fulfillment because that parent's happiness and fulfillment enure to the child's benefit in the new family unit." (Citations omitted.) Id., 115.

Not only have our sister states recognized that postjudgment relocation issues differ from those that arise at the time that a marriage is dissolved, but in *Blake* v. *Blake*, 207 Conn. 217, 541 A.2d 1201 (1988), our Supreme Court reached a similar conclusion. The facts in *Blake* strongly resemble those in the present situation. In *Blake*, the plaintiff wife, during the trial for the dissolution of the parties' marriage, sought to relocate to California with the parties' three minor children. The trial court awarded joint custody, but gave primary physical custody to the plaintiff and permitted her to relocate with the children to California.

Relying on a number of New York cases, on appeal the defendant in *Blake* claimed that the trial court improperly permitted the plaintiff to relocate to California because it did not require the plaintiff to demonstrate a compelling reason to justify relocating. Noting that the cases on which the defendant based his claim all involved postjudgment modification requests to relocate, our Supreme Court held: "[W]e are not concerned with the modification of a previous judicial determination involving the place of the child's residence but with the initial resolution . . . in the dissolution decree . . . ." Id., 221. Accordingly, our Supreme Court held that the postjudgment relocation cases that the defen-

dant relied on were distinguishable from and inapplicable to that case, which involved the initial resolution of the residence issue in the dissolution decree.[8] Id.

We, therefore, hold that that burden shifting scheme in *Ireland*, and the additional *Tropea* factors, do not pertain to relocation issues that arise at the initial judgment for the dissolution of marriage. Rather, we find that *Ireland* is limited to postjudgment relocation cases. We conclude that because the *Ireland* court did not expand its holding to affect all relocation matters, relocation issues that arise at the initial judgment for the dissolution of marriage continue to be governed by the standard of the best interest of the child as set forth in § 46b-56. While the *Ireland* factors may be considered as "best interest factors" and give guidance to the trial court, they are not mandatory or exclusive in the judgment context.

On the basis of the foregoing, we conclude that the trial court properly declined to apply the *Ireland* factors and burden shifting to the present case.[9] Furthermore, we hold that the court appropriately considered this relocation issue pursuant to § 46b-56 and the best interest of the child standard.

II

The defendant next claims that the court abused its discretion in denying his motion to open the testimony. We disagree.

[8] The *Ireland* decision does not overrule or disturb the holding in *Blake*. The *Ireland* court did not address or even cite *Blake*, further bolstering our conclusion that it did not intend for its decision to apply to relocation issues at judgment.

[9] The defendant additionally claims that the court improperly utilized only some, as opposed to all, of the *Ireland* factors in arriving at its decision. As we have concluded, under the circumstances of this case the court was not bound to apply the *Ireland* factors in determining whether relocation was in the best interest of the minor child. Moreover, to the extent that the defendant challenges the trial court's conclusion that relocation was in the best interest of the minor child or argues that the court misapplied § 46b-56, we address his claim in part III of this opinion.

The following additional facts are relevant to our disposition of this claim. Prior to judgment being rendered but after the presentation of the evidence, the defendant filed a motion for contempt and a motion to open the testimony on the ground that he discovered new evidence. The defendant's motions were based on the plaintiff's testimony during the trial that she had sexual relations with a male in the marital home while their child was present in the house in violation of a pendente lite order limiting dating activities. Specifically, in his motion to open, the defendant asserted that "[s]aid information relates to the plaintiff's cohabitation and living arrangements and did not come to [his] attention . . . until after the evidence had been closed in this matter. . . . The court should hear and consider such evidence as it directly relates to a number of issues and considerations, including the best interests of the minor child, the likelihood that the plaintiff will comply with orders of this court, and the credibility of the plaintiff's claims . . . ." Although the trial court granted the defendant's motion for contempt, it denied his motion to open the testimony. In denying the motion to open, the court stated: "After hearing the evidence today and even hearing the allegations before we heard the evidence today, it's my conclusion that the new evidence would not significantly impact the ultimate decision involving relocation . . . ."

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. . . . In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Citations omitted;

internal quotation marks omitted.) *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 315, 714 A.2d 686 (1998). Accordingly, we review the trial court's action here under an abuse of discretion standard. *Murray* v. *Murray*, 65 Conn. App. 90, 102, 781 A.2d 511, cert. denied, 258 Conn. 931, 783 A.2d 1029 (2001). "When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) Id.

In this case, the court heard testimony from the plaintiff herself regarding her relationship and sexual relations with another male while the parties' minor child was present in the home. The trial court was well aware that the plaintiff had violated the pendente lite order limiting the parties' dating activities. Moreover, during this seven day trial, both parties presented witnesses and evidence regarding their parenting abilities. As the trial court stated, "at the long trial that we've had, [the court] had sufficient opportunity to evaluate the credibility of both parties and requires no further assistance in its judgment of the credibility of both of these parties." Accordingly, it was well within the trial court's broad discretion for it to conclude that additional evidence of the plaintiff's living arrangements "would not significantly impact" its decision. We conclude that the trial court acted within its discretion.

### III

The defendant's final claim is that the court abused its discretion in issuing the custody, relocation and visitation orders.[10] We are not persuaded.

The authority of a trial court to render custody, visitation and relocation orders is set forth in § 46b-56. Sec-

[10] The defendant's challenges to the custody and visitation orders appear to arise from and be wholly connected to the relocation order. Accordingly, we will address the defendant's claims regarding those three orders as a whole.

tion 46b-56 provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . . [T]he court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . . (b) In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child . . . ." "The paramount concern in ordering custody is the best interests of the child." *Hall* v. *Hall*, supra, 186 Conn. 121.

Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. See *Gallo* v. *Gallo*, 184 Conn. 36, 43–44, 440 A.2d 782 (1981). "[I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. See *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980); *Simons* v. *Simons*, 172 Conn. 341, 348, 374 A.2d 1040 (1977). The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. General Statutes § 46b-56 (b); *Spicer* v. *Spicer*, 173 Conn. 161, 162, 377 A.2d 259 (1977); *Simons* v. *Simons*, supra, 347. In determining what is in the best interests of the child, the court is vested

with a broad discretion. *Ridgeway* v. *Ridgeway*, supra; *Kearney* v. *State*, 174 Conn. 244, 252, 386 A.2d 223 (1978); *Palmieri* v. *Palmieri*, 171 Conn. 289, 290, 370 A.2d 926 (1976). [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. *Kearney* v. *State*, supra, 252, quoting *Morrill* v. *Morrill*, 83 Conn. 479, 491, 77 A. 1 (1910)." (Internal quotation marks omitted.) *Presutti* v. *Presutti*, 181 Conn. 622, 626–27, 436 A.2d 299 (1980).

"The trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Citations omitted.) *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 625, 561 A.2d 443 (1989).

The defendant claims that the court abused its discretion in granting primary physical custody to the plaintiff, in permitting the plaintiff to relocate with the minor child to Massachusetts and in issuing a visitation order that will alter his relationship with the child. Specifically, the defendant asserts that the court abused its discretion when it acted in contravention of the recommendations by the guardian ad litem and the court-

appointed psychologist, Harry Adamakos. After thoroughly reviewing the record and the evidence before the trial court, we conclude that the court did not abuse its discretion and that it indeed issued the orders based on the best interest of the child.

In arriving at its decision, the court stated: "Both sides presented witnesses who validated the parties' statements about their interest in the child's welfare and their abilities as custodial parents. The court is convinced that those representations are true, that each parent is concerned about the child and is a capable custodian. . . . Section 46b-56 of the General Statutes provides that the best interests of the child must always govern decisions involving custody. With that standard in mind, the court has carefully weighed the evidence presented."

The trial court took into account the testimony of and the report prepared by Adamakos, the clinical psychologist who performed the evaluations of the family, and the fact that the guardian ad litem embraced Adamakos' recommendations. The court noted that Adamakos concluded that "[e]ach party is capable of effectively parenting the child. Each has a loving relationship and strong bond with the child . . . . [The minor child] would benefit greatly from having regular contacts with both parents . . . ." The court also acknowledged Adamakos' suggestions that the "parents live in close proximity to each other," that "[t]he parties should share joint legal custody" and that "[t]he plaintiff, who has been the primary caretaker . . . should be designated the primary physical custodian . . . [but] the defendant should have physical custody a substantial period of time approaching 50 percent . . . ."

In granting to the plaintiff primary physical custody and permission to relocate with the minor child, the court stated: "The court has concluded that it would

serve Joshua's best interests if he is permitted to relocate to Massachusetts with his mother. . . . The only significant disadvantage to the child's moving as expressed by the defendant and the evaluating psychologist is that the frequency of contacts between father and son would be reduced. This problem is minimized by the proximity of Boston to Connecticut. The court believes that the 'geographic proximity' requirement suggested by Adamakos is satisfied if the plaintiff lives in the Boston area."

We initially note that a trial court is not "bound to accept the expert opinion of a family relations officer. . . . [A] trial court is free to rely on whatever parts of an expert's opinion the court finds probative and helpful." *Yontef* v. *Yontef*, 185 Conn. 275, 281, 440 A.2d 899 (1981). This was a difficult and heavily contested case. We conclude, however, that the court acted within its broad discretion and properly based its decision on the standard of the best interest of the child. Moreover, after thoroughly reviewing the record, we conclude that the court's decision was reasonably supported by the evidence. In view of the court's findings, we cannot conclude that the court abused its broad discretion in determining that it was in the best interest of the minor child to award primary physical custody to the plaintiff and to permit her to relocate.

The judgment is affirmed.

In this opinion the other judges concurred.