MAUREEN NOONAN *v.* PAUL NOONAN
(AC 30729)

DiPentima, Robinson and Hennessy, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 16—officially released June 29, 2010

*Richard C. Stewart*, for the appellant (plaintiff).

*David P. Ball*, for the appellee (defendant).

DiPENTIMA, J. In this dissolution of marriage action, the plaintiff, Maureen Noonan, appeals from the judgment of the trial court. On appeal, the plaintiff claims that the court improperly (1) failed to give proper effect to the pendente lite orders concerning her relocation to Farmington with the parties' two minor children, Mackenzie and Devan, (2) failed to apply the provisions of General Statutes § 46b-56d to the issue of the relocation of the children back to Ridgefield, (3) made certain findings that have no reasonable bases in fact so that it rendered its custody and visitation orders without giving proper effect to certain behavior of the defendant, Paul Noonan, and (4) issued punitive financial orders to force the plaintiff to relocate. We affirm the judgment of the trial court.

The court found the following facts. The parties were married on August 21, 1999, in Cooperstown, New York. At the time of the dissolution action, the parties were residing in Ridgefield. They have two minor children, born November 18, 2002, and September 7, 2004. Their second child, Devan, was diagnosed at the age of eighteen months with Velo-Cardio-Facial Syndrome (VCFS), a chromosome abnormality.[1] The parties' marriage has broken down irretrievably.

The defendant holds bachelor of science and juris doctor degrees. He is employed in a management position with General Electric, located in Ossining, New York, and earns $2692 per week. The plaintiff holds a bachelor of arts degree in elementary education and a master's degree in reading from Western Connecticut

---

[1] VCFS can affect each child differently, but in Devan's case, she has only one kidney and exhibited a congenital heart condition that has required an operation. She suffers from low muscle tone, tires easily and has some cognitive delay. She requires special education support, including speech, language and physical therapy.

State University. Before the parties' children were born, she was employed for ten years as an elementary school teacher in the private sector. She is not certified to teach in Connecticut. Since the parties' children were born, the plaintiff has not worked outside the home in any full-time capacity. The plaintiff has worked sporadically part-time, as a tutor and as a cafeteria aide in the school that the children attended in Ridgefield.

The plaintiff filed this dissolution action on April 9, 2007. On May 21, 2007, the court, *Axelrod, J.*, granted the plaintiff's motions for custody and exclusive possession and established a comprehensive visitation schedule.[2] On April 16, 2008, the defendant filed a motion seeking to enjoin the plaintiff from moving with the children from Ridgefield to Farmington and requested that the court require that the children reside in Ridgefield during the pendency of the action. At that time, the defendant continued to reside in Ridgefield. On May 12, 2008, the court, *Lavery, J.*, denied the defendant's motion and ordered that the plaintiff was free to move to the Farmington area, where several members of her family reside. The court found this move to be in the best interests of the children. The plaintiff subsequently moved with the children to Farmington. Starting on December 1, 2008, the plaintiff began work tutoring students, ten hours per week for the Farmington school system, earning $20.03 per hour.

On January 9, 2009, after a trial, the court, *Calmar, J.*, rendered judgment dissolving the parties' marriage.

---

[2] The plaintiff asserts that the order of the court, *Axelrod, J.*, dated May 21, 2007, was an order granting the plaintiff sole custody. The court, *Calmar, J.*, found, however, that "[a]lthough the court indicated it was considering the plaintiff's motion for sole custody, coded 102.1, [as well as] part of the defendant's motion, coded 103, seeking an order of joint custody, the plaintiff represented on the record that she was 'not really contesting joint custody, we're really contesting how the visitation . . . [is] going to work in the house for the best interests [of the children] . . . . [W]e're not really arguing that—that we shouldn't have joint custody.' "

The court ordered, among other things, that the parties would have joint legal custody of their children and that, in absence of an agreement between the parties, the final decision-making authority regarding the children would be with the defendant. The court determined that the move to Farmington was not in the children's best interests and that it was necessary for the children to live in the Ridgefield area. The court ordered that "[t]he children shall reside primarily with [the defendant] and [the plaintiff] shall have parenting time every other weekend . . . . The plaintiff may also elect midweek . . . access in Ridgefield upon twenty-four hours notice to the defendant . . . provided that the children attend their scheduled activities, complete their homework and are returned to the defendant's residence by 8:00 p.m." The court further ordered, however, that "[i]f the plaintiff . . . resumes residence in the greater Ridgefield area within thirty days of this judgment, the children shall thereafter reside primarily with [the plaintiff] and the defendant . . . will have parenting time on alternate weekends . . . . The defendant . . . will have parenting time two afternoons each week with the children from 5:30 until 8:00 p.m., which days will be Tuesday and Thursday, unless the parties agree otherwise in writing [that is] signed by both parents." The plaintiff appealed from the judgment. Additional facts will be set forth as necessary.

The plaintiff's claims primarily are premised on her assertion that the court abused its discretion in its factual findings regarding the best interests of the children, including custody, relocation and child support matters. Our standard of review regarding custody issues arising within a dissolution of marriage action is well settled. "Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . [I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion

and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) *Ford* v. *Ford*, 68 Conn. App. 173, 187–88, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002).

General Statutes § 46b-56 (c) directs the court, when making any order regarding the custody, care, education, visitation and support of children, to "consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of [sixteen enumerated] factors. . . . The court is not

required to assign any weight to any of the factors that it considers."

We address each of the plaintiff's claims in turn.

I

The plaintiff first claims that the court improperly failed to give proper effect to the pendente lite orders concerning her relocation with the parties' two minor children. More specifically, she claims that the court abused its discretion by not treating the prior custody orders of the court as res judicata on the issue of whether residing in Ridgefield or Farmington was in the best interests of the children. We decline to review this claim.

A review of the record reveals that the plaintiff did not raise a claim of res judicata regarding the pendente lite custody orders before the trial court. She neither pleaded it as a special defense, nor argued it at trial. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . [S]ee . . . Practice Book § 60-5 (court not bound to consider claim unless it was distinctly raised at the trial). . . . [T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Citations omitted; internal quotation marks omitted.) *Labow* v. *Labow*, 115 Conn. App. 419, 425–26, 973 A.2d 127 (2009), cert. denied, 295 Conn. 912, 990 A.2d 344 (2010). Further, Practice Book § 10-50 provides in relevant part that "res judicata must be specially pleaded . . . ." "The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed . . . ." (Internal quotation marks

omitted.) *Martino* v. *Scalzo*, 113 Conn. App. 240, 245, 967 A.2d 339, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). The plaintiff, therefore, may not raise this argument for the first time on appeal. Accordingly, we decline to review the plaintiff's claim that the court improperly did not treat the pendente lite custody orders as res judicata.

## II

Next, the plaintiff claims that the court improperly failed to apply the provisions of § 46b-56d to the issue of the relocation of the children back to Ridgefield. More specifically, she claims that the court acted improperly by neglecting to consider the elements set forth in § 46b-56d in its memorandum of decision.[3] We do not agree.

"In 2006, the legislature enacted Public Acts 2006, No. 06-168, codified as § 46b-56d, which sets out the analysis a court is to apply when deciding a *postjudgment* motion to relocate with a couple's minor child. Section 46b-56d adopted the shift in the burden of proof to the relocating parent set forth in *Ireland* v. *Ireland*,

---

[3] General Statutes § 46b-56d provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements."

246 Conn. 413, 425, 717 A.2d 676 (1998), and expanded the best interest of the child standard adopted through case law by providing specific factors that the court is to consider." (Emphasis added.) *Taylor* v. *Taylor*, 119 Conn. App. 817, 821–22, 990 A.2d 882 (2010). The judgment at issue in this case, however, is not a postjudgment motion.

In a recent case, *Lederle* v. *Spivey*, 113 Conn. App. 177, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009), this court stated that "[p]rior to *Ireland* v. *Ireland*, [supra, 246 Conn. 413], the courts [used] the best interest of the child standard, as set forth in § 46b-56 (b), in deciding relocation issues. Section 46b-56 (b) provides in relevant part: In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . . In *Ford* [v. *Ford*, supra, 68 Conn. App. 173], we recognized that the interests present in a postjudgment proceeding to modify custody are not the same as those present during a trial for the dissolution of a marriage. Id., 179–81. We therefore concluded that the scheme in *Ireland*, and the additional [factors under *Tropea* v. *Tropea*, 87 N.Y.2d 727, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996)] [did] not pertain to relocation issues that arise at the initial judgment for the dissolution of marriage. Rather . . . *Ireland* is limited to postjudgment relocation cases. . . . [B]ecause the *Ireland* court did not expand its holding to affect all relocation matters, relocation issues that arise at the initial judgment for the dissolution of marriage continue to be governed by the standard of the best interest of the child as set forth in § 46b-56. While the *Ireland* factors[4] may be considered as best interest factors and give guidance to the trial court, they are not mandatory or exclusive in the

---

[4] Although § 46b-56d (a) removed the burden shifting scheme set out in *Ireland*, the *Ireland* factors essentially were codified by § 46b-56d (b).

judgment context." (Citation omitted; internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 186–87. The court further noted, in a footnote, that "[t]he enactment of General Statutes § 46b-56d clearly changed the analysis and the burden allocation in postjudgment relocation cases, but there is no indication that the legislature intended it to apply to relocation matters resolved at the time of the initial judgment for the dissolution of a marriage." Id., 187 n.11.

The court made factual findings that directly address factors illustrating the best interests of the children. In its detailed memorandum of decision, the court found that "[t]he relocation [to Farmington, pursuant to the pendente lite order] has not benefited the children. As a result of the distance between their parents' homes, the children spend an inordinate amount of time commuting in automobiles. . . . This is a stimulus deprived environment and an unnecessary and untenable situation." The court also found that "[t]he plaintiff's assertion that she is supportive of a meaningful relationship between the defendant and their daughters is not sincere. After May, 2007, when she was granted sole legal custody of the children, she acted unilaterally, where the children were concerned, without notice to the defendant and out of a sense of entitlement. This conduct was not in her children's best interests. She did not respect her children's father enough to discuss her plan with him: the defendant learned of the plaintiff's plans to move to Farmington with his daughters from family services, not from her. Most telling, after the move to Farmington, the plaintiff unilaterally decided to switch the pediatrician for the parties' daughters to her brother-in-law, without any input or notice to the [defendant]."

There is sufficient evidence in the record to support the court's findings of fact and determination of the issue of relocation. Further, the court was not required

to consider the elements set forth in § 46b-56d in its judgment of dissolution. We, therefore, cannot conclude that the court abused its discretion in finding that it was in the best interests of the children to relocate to Ridgefield.

### III

Next, the plaintiff claims that the court improperly made certain findings that have no reasonable basis in fact and rendered its custody and visitation orders without giving proper effect to certain behavior of the defendant. We do not agree.

### A

The plaintiff claims that the court's findings that the relocation to Farmington was unnecessary and not for a proper purpose, and that there is no foundation for the plaintiff's position that the defendant could not be trusted to make responsible and appropriate decisions regarding the children have no reasonable bases in fact. Specifically, the plaintiff refers to other findings of fact and uncontested evidence that she claims are inconsistent with these findings. For example, the plaintiff cites the court's statement that the defendant had been "confrontational and verbally abusive, self-centered and disrespectful of [the plaintiff] . . . in front of the children." Additionally, she refers to the defendant's arrest for reckless endangerment of a police officer and his "toxic anger."

The plaintiff testified at length about, among other things, her reasons for relocating to Farmington during the pendency of the action. The plaintiff and the defendant both testified about the ramifications of the plaintiff's relocation to Farmington with the children since the relocation, and about their potential plans for the children's educational, medical and daily care in the future. Both parties also testified regarding the plaintiff's behavior toward the defendant since the move to

Farmington, including occasions when the plaintiff did not allow the defendant to exercise court-ordered visitation with the children. The parties each testified about the difficulty of communicating with each other but indicated that they are committed to improve their communication for the sake of their children.

In its memorandum of decision, the court discussed the defendant's history of behavior in detail and concluded that "[t]he defendant, having successfully resumed psychotherapy, is reflective of his past behavior. . . . He has made dramatic improvements in his behavior since the end of July, 2008." It further found that the plaintiff did not consider the negative consequences that resulted from her move to Farmington.[5] Finally, the court found that "[t]he parties, when they are not in the presence of each other, are loving with their children. Individually, they are capable of responsible and meaningful decisions concerning the most important issues in the lives of their daughters." In

[5] The court found that "[t]he plaintiff, in no small part because of the defendant's roguish behavior, was empowered during the pendente lite period to determine when her children would see [the defendant]. This court finds that no good has come of this. She has not used her authority wisely. Despite the challenges that confronted them as a result of their parents' turbulent marriage and Devan's medical issues, the children were thriving in the Ridgefield school system and enjoying excellent care from their local pediatrician. Nevertheless, the plaintiff, without any notice to the defendant, moved their daughters to a community more than two hours away from his place of employment and changed their medical care. The plaintiff failed to even consider the negative ramifications that could have resulted from the move to Farmington. The move was unnecessary and not for a legitimate purpose. The plaintiff's anger over the defendant's behavior caused her to act in a manner detrimental to the emotional health, security and stability of her children. The manner in which the plaintiff has exercised her sole decision-making authority, while the marital dissolution has been pending, has adversely affected the defendant's relationship with his children. The move to Farmington has made midweek parenting time and participation in weekend activities extremely difficult; the burden caused [to] the children by the plaintiff's relocation is unnecessary and unproductive commuting."

short, the record reveals sufficient evidence to support these findings of the court.

B

The plaintiff refers to specific evidence in support of her contention that the court rendered its custody and visitation orders without giving proper effect to the defendant's behavior. Specifically, she claims that the court ignored evidence of " 'confrontational, verbally abusive . . . and disrespectful [behavior toward the plaintiff]' . . . in front of the children,' " the defendant's arrest on charges of reckless endangerment of a police officer following a custody exchange, the defendant's " 'toxic' anger," an incident in which the defendant left the older child, Mackenzie, alone in the car in the dark and an occasion where the defendant medicated the younger child, Devan, with a penicillin based medication, even though she had a known allergy to penicillin. The plaintiff, however, does not address all of the other evidence that was presented at trial, including the specific factual findings of the court that the defendant took responsibility for past behavior, his commitment to improving his mental health condition, his actions taken in furtherance of this commitment and his interest in joint custody of the two minor children.

The defendant testified at trial that, despite the fact that he had not been consistent with therapy in the past, he was now "100 percent committed" to continuing therapy and taking his medication. He also stated that "my behavior today is . . . much more calm and relaxed, much more in control. [I] have been able to act in a way that was more consistent with the way that I was told was appropriate."

The court did not ignore evidence of the defendant's past behavior but, instead, found that "[the defendant] has made dramatic improvements in his behavior since the end of July, 2008. In the words of the guardian ad

litem, he has gone from being 'demanding, rude, irate and abusive' to 'pleasant, reasonable, polite, thoughtful and child focused.' He has become . . . a better parent over the course of the separation. The defendant has expressed a strong commitment at trial to continue his medication and therapy and has agreed to authorize his therapist to communicate with the guardian ad litem concerning his ongoing treatment."

"Once again, this court is compelled to state, what has become a tired refrain, we do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, supra, 119 Conn. App. 825. The record reflects evidentiary support for the court's factual findings regarding the behavior of the parents and the best interests of the children. We conclude, therefore, that the court did not abuse its discretion in making its factual findings.

IV

Finally, the plaintiff claims that the court improperly issued punitive financial orders to force her to relocate. Specifically, the plaintiff claims that the court's financial orders were designed to punish her if she chose to exercise her right to remain in Farmington. We do not agree.

The following facts are relevant to the resolution of this claim. In its memorandum of decision, the court ordered that if the plaintiff returned to the greater Ridgefield area, which would allow her to retain custody of the children, she would receive $377 per week in child support and $500 per week in alimony. If the plaintiff remained in Farmington, which would result in the children being transferred to the custody of the defendant, she would receive $150 per week in alimony and have to pay the defendant child support of $38 per week.

The lone case that the plaintiff cites in her argument that the financial orders are punitive is *Szegda* v. *Szegda*, 97 Conn. App. 426, 904 A.2d 1266, cert. denied, 280 Conn. 932, 909 A.2d 959 (2006), which states, in relevant part, that "[a]limony is not designed to punish, but to ensure that the former spouse receives adequate support." (Internal quotation marks omitted.) Id., 432. The court specifically laid out the reasoning behind its alimony and child support awards. The court stated, in regard to the financial orders, that "if the plaintiff does not return to the Ridgefield area with the children, she will have a greater opportunity to focus on the resumption of her career on a full-time basis" and, if she does relocate to the Ridgefield area, "[her] opportunities to resume full-time employment in the private secondary school system will be limited in part because of the extra attention required to attend to the needs of the youngest child." A review of the record reflects that the court's determination is supported by the evidence. The intent of the court's financial orders was not designed to punish the plaintiff or to force her to relocate but, instead, was based on realistic considerations of her financial situation. Therefore, we conclude that the court did not abuse its discretion in its financial orders of alimony and child support.

The judgment is affirmed.

In this opinion the other judges concurred.

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.