OPINION OF THE COURT
Joan S. Kohout, J.
A petition has been filed by Sara P. requesting a modifica *989 tion of the divorce decree signed by the Honorable Harold L. Galloway on August 2, 1994, which granted joint custody of the parties’ child Morgan “equally dividing time spent with the child” between her parents. Ms. P. requests primary residence of Morgan and permission to relocate with the child to the State of South Carolina. She additionally requests appropriate child support. The respondent Richard T. has filed his own petition to modify the divorce decree, seeking primary residence of the child during the school year subject to liberal periods of residency with the mother during summer and school recesses.
Both parents have been represented by counsel throughout the proceedings and the court has assigned a Law Guardian for Morgan. Morgan has directed her Law Guardian to take no position relative to the petitions filed by her parents. The court has heard testimony regarding the parents’ petitions over several dates and has reviewed the memoranda of law submitted by counsel.
FINDINGS OF FACT
The petitioner and respondent were married in 1983 while the petitioner was in the military. Morgan was born on May 31, 1988. At that time, Mr. T. was attending school and Ms. P. was serving in the Marines at Parris Island, South Carolina. After Morgan’s birth, the couple agreed that Mr. T. would stay home with Morgan and provide her primary care.
In August 1989 the family moved to Rochester, New York, where Ms. P. had obtained employment with Xerox Corporation. Mr. T. continued to care for Morgan after the move to Rochester. In November 1990 Ms. P. was ordered to active duty in the Persian Gulf and was out of the country until April 1991. During that time, Morgan continued in the full-time care of her father.
Shortly after Ms. P. returned home, the parties decided to separate with Ms. P. establishing a separate residence within the family home. In August 1992 she vacated the residence and the parents began a shared custody arrangement, spending equal time with their daughter.
Before the parties separated, Mr. T. became employed by IBM as an independent contractor. Originally he earned $15,000 per year, which increased to between $40,000 and $41,000 in 1996. Mr. T. has been employed as an UNIX System Administrator since February 1997. He has arranged day care for Morgan two or three days per week during times that she is with him at a cost of $50 to $60 every two weeks. Ms. P. has *990 not contributed to the cost of day care, although she is court ordered to pay 64.5% of day-care expenses. Since June 1997 Ms. P. has also failed to make the $69 per week child support payments required by the divorce decree.
The divorce decree and incorporated stipulation of the parties creates an equally shared custody arrangement. Originally Morgan moved between her parents every few days. Beginning in the summer of 1995, after consulting with school personnel, the parties modified their arrangement so that Morgan alternated weeks with her parents. When Ms. P. relocated to the State of South Carolina during the summer of 1997, the parents agreed to a two-week alternating schedule which allowed Ms. P. to come up to Rochester for two-week blocks of time with Morgan.
When Morgan resides with her father she lives in a rented home in suburban Irondequoit along with her father’s companion Tina Coppinger and Ms. Coppinger’s two children Misty (age 10) and Joshua (age 7). While Ms. Coppinger and Mr. T. have no plans to marry at the present time, they each testified to a desire to continue residing together as a family.
Ms. P. married Patrick S. on January 4, 1996 and presently resides with him at her parents’ home in Greenville, South Carolina. Their long-term plan is to build or purchase a home in the Greenville area.
Mr. S. is employed by Duke Energy in Greenville. He has a Master’s degree in computer software management and holds a dental degree, although he has not practiced dentistry since 1988. Mr. S.’s background, which includes a Bachelor’s degree in chemistry, provides him with uniquely marketable skills which have resulted in a one-year contract with Duke at an annual salary of $114,000 per year.
While Mr. S. was working in Rochester he was a contract employee at Eastman Kodak, earning $76,000 per year. His contract ended in February 1997. Mr. S. received an offer of permanent employment from Kodak paying $63,500, which he rejected. On or about May 30, 1997 Mr. S. received an offer of employment through a contact agency for a job in Charlotte, North Carolina, at the rate of $43 per hour. This job was with Duke Energy as a customer service employee.
Mr. S. testified that the decision to relocate was part of an ongoing discussion with his wife beginning as early as September of 1995, after he and Ms. P. had become engaged. He felt the move would be advantageous because Ms. P. would *991 not have to work due to the increase in his salary, they would be closer to family and it would be best for all concerned, including Morgan.
On June 1, 1997 Patrick S. moved to Charlotte, North Carolina. At that time Ms. P. informed Mr. T. that Patrick had received an offer and that they intended to move. She stated that she was not going to move until things were “settled”, including providing notice to Xerox. Ms. P. suggested that Morgan relocate with her and spend summers with her father. This was not acceptable to Mr. T. Ms. P. described these discussions as “we agreed to disagree.” In September 1997 Mr. S. moved to Greenville and began working at his present job. He and Ms. P. moved in with her parents, where they presently reside.
Neither parent presents any particular concerns regarding the care provided by the other parent. They each describe the other as a good, although different, parent. Morgan has thrived under the joint care of her parents. She is described as a bright, cheerful girl who likes to be active. She is doing well in the West Irondequoit school system, where she receives special educational services. Morgan was diagnosed as being speech impaired in 1991 and has received special services since that time.
In the past, Morgan has had difficulties with her hearing. Her parents took her to various specialists. Ultimately, Morgan had tubes put in her ears and then had her tonsils removed. Since that time her speech has suffered, necessitating a regimen of speech therapy. Morgan also continues to need extra help, especially with spelling, organization of materials and budgeting her time. She has no special medical needs at the present time, although she does wear glasses. All of Morgan’s medical providers are located in Monroe County.
Mr. T. expressed keen insight into Morgan’s circumstances, stating to the court that he felt it would be best for Morgan if her mother returned to Rochester so that both parents could continue to be significantly involved in her life and so that “she feels she is fully mom’s kid and fully dad’s kid.” Ms. P. did not indicate that she believed uprooting Morgan from the Rochester area and her father would have any impact on the child.
CONCLUSIONS OF LAW
The main focus of this case at trial was the relocation of Ms. P. to Greenville and her desire to have Morgan move there with her. The term “relocation” has become a legal term of art *992 for cases involving a proposed move by a custodial parent. The New York State Court of Appeals in the leading case Matter of Tropea v Tropea (87 NY2d 727, 736 [1996]) has well described the dilemma of relocation: “In these cases, the interests of a custodial parent who wishes to move away are pitted against those of a noncustodial parent who has a powerful desire to maintain frequent and regular contact with the child.”
All reported relocation cases reviewed by the court involve children who primarily reside with one parent either through a traditional sole custody arrangement or a joint custody order with a primary residence provision. The court has been unable to find any relocation case involving parents who are truly equal custodial caretakers of their child.
In Tropea (supra) the Court of Appeals was called upon to determine whether two sets of children, who resided primarily with their mothers and visited regularly and frequently with their fathers, should be allowed to move to another community far enough away to require a restructuring of the fathers’ visitation. In both cases, after considering all relevant factors, the Court held that it was in the best interest of the children to move to the new residence with their mothers who were the primary parents. The Court of Appeals noted that after a divorce “it may be unrealistic in some cases to try to preserve the noncustodial parent’s accustomed close involvement in the children’s everyday life at the expense of the custodial parent’s effort to start a new life or to form a new family unit.” (Matter of Tropea v Tropea, supra, at 740.)
Because Morgan has no single custodial parent, the analysis in Tropea (supra) and similar relocation decisions provides little guidance. The facts of this case fit more easily within the broader parameters of the classic modification of custody case. Truly, what the court is being asked to do here is to change custody from a dual custodial arrangement to one with a single primary residential parent.
In determining whether a modification of Morgan’s custody should be granted, the court must examine what arrangement would be in her best interest. There are “no absolutes” in making child custody determinations. (Friederwitzer v Friederwitzer, 55 NY2d 89, 93 [1982]; Eschbach v Eschbach, 56 NY2d 167 [1982].)
While this is the same standard as would be applied in a Tropea-style relocation case, the analysis by necessity must include the broader issues of parental qualifications, Morgan’s needs and the desire for stability in the child’s life. (See, Eschbach v Eschbach, 56 NY2d 167, 171-172, supra.)
*993 Consequently, while the factors considered in determining best interest in Tropea (supra) are relevant, they are not determinative and must be assessed along with all of the circumstances. Best interest factors discussed in Tropea relating to parental relocation include the mother’s reasons for seeking to move, the quality of the parental relationship, the impact of the move on the quantity of the child’s contact with her father, the degree to which the moving parent’s life may be enhanced by the move and the feasibility of preserving the relationships of the child and the nonrelocating parent. (Matter of Tropea v Tropea, supra, at 740-741.)
Other factors not directly related to mother’s relocation are, however, more important in this case, including which parent is better able to provide the nurturance and guidance needed by Morgan, the existence of a long-standing successful equal parenting agreement and order, as well as the fact that Morgan is doing well in her school and in the community here in Monroe County.
Ms. P.’s decision to move to South Carolina was unilateral and made without input from Mr. T. or Morgan. Given the long history of cooperative shared parenting, this decision and the manner in which it was made were ill-advised and showed little insight into the consequences for Morgan.
Morgan has known no other world than the one where she has either lived with both parents or spent equal time with each of them. By all accounts, she has adjusted to her postdivorce world well. She has friends and a full life in both parents’ homes. Morgan has been one of the fortunate children of divorce who have not had to compromise their relationships with their parents, and has been able to thrive under the joint care of her mother and father.
Undoubtedly, the best arrangement for Morgan would be for her mother to return to Rochester and continue the equal parenting arrangement. Ms. P. and her husband, however, were clear that they have no intention of returning to Monroe County. Given that circumstance, and this court’s lack of authority to order Ms. P. to return to Monroe County, a decision must be made as to which parent is better able to meet Morgan’s needs and which home is most consistent with her best interests.
After a careful assessment of all the relevant factors and a thorough examination of what custodial arrangement would promote Morgan’s best interest, the court grants Mr. T.’s cross petition and modifies the parties’ divorce decree to grant him *994 primary physical residence of Morgan. No request is made to alter the joint custodial provisions and the court finds no reason why the parties should not continue as joint custodians. (Cf., Braiman v Braiman, 44 NY2d 584 [1978].)
Mr. T. presented as being more empathetic with Morgan’s emotional need to be with both parents. He was her primary caregiver during her early years and well able to provide the guidance and nurturance that she requires. It is the court’s opinion that he will be better able to provide her with the comfort and strength she will need to adjust to the new custodial arrangement. The court also finds that he is committed to insuring that Morgan will have maximum contact and extended visitation with her mother. Finally, Morgan will remain in the same school and community where she is doing well.
While Ms. P. is clearly an able and loving mother, her move to Greenville was driven far more by personal preference than by pressing financial or family considerations. Significantly, the move was not based on Morgan’s needs. Had her husband accepted the job at Kodak and had she retained her employment at Xerox, their family income would he approximately the same as it is now. Furthermore, there is no assurance that Mr. S.’s job in South Carolina will continue when his one-year contract expires next summer.
The fact that Ms. P. quit her job and ceased paying child support to Mr. T. shows a lack of concern for her daughter. Mr. T. has had financial difficulties that are well known to Ms. P. and the child support payments no doubt enhance his ability to provide for Morgan’s needs.
The court finds that substantial blocks of time for Morgan and her mother are consistent with Morgan’s best interest and her parents’ desires to keep travel at a minimum. Therefore, the court directs the following schedule, which may be expanded by the agreement of the parties:
1. The parties shall alternate the following school recesses: winter recess, spring recess and Christmas recess. Spring recess 1998 shall be with Ms. P.
2. Morgan shall spend one half of summer recess with her mother.
3. Transportation costs for visitation shall be borne by Ms. P.
4. The parties are encouraged to arrange additional visitation consistent with Morgan’s best interest, especially around holidays and other periods when Morgan is not in school.
*995 In conclusion, Mr. T. and Ms. P. are to be commended for the five years of equal parenting they have achieved. Hopefully, their cooperative relationship will continue under this new arrangement and the parental flexibility needed to make it successful for Morgan will occur. Morgan certainly will require the support and encouragement of both parents as she adjusts to the changes. I have no doubt that both parents will provide her with the love and help she will need to succeed in her changing world.