Matter of Pamela H. v Cordell W. (2006 NY Slip Op 50969(U))

[*1]

Matter of Pamela H. v Cordell W.

2006 NY Slip Op 50969(U) [12 Misc 3d 1159(A)]

Decided on May 15, 2006

Family Court, Monroe County

Sciolino, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 15, 2006

Family Court, Monroe County
In the Matter of a Proceeding under Article 6 of the Family Court Act, Pamela H., Petitioner
 against
Cordell W., Jr., Respondent
XX06

Edward Nowack, Esq.
Monroe County Public Defender
Attorney for Petitioner
Tamara Guglin, Esq., of Counsel
Robert Youngman, Esq.
Monroe County Conflict Defender
Attorney for Respondent
Galo Proano, Esq., of Counsel
Kimberly W. Weisbeck, ESQ.
Law Guardian

Anthony J. Sciolino, J.
Petitioner (hereinafter "Mother") and Respondent (hereinafter "Father"), are the parents of one child, Jordan W., born 4/15/01, age 5, issue of their non-marital union. By Order of this Court dated October 27, 2003, based on their oral stipulation, they were granted joint custody of Jordan with primary physical residence to Mother. Periods of residency with Father alternate between two and four days per week. Holidays also alternate and Father has two non-consecutive weeks of physical residency each year. The parties can mutually agree to other [*2]visitation times. The Order also contains a provision that there is to be no permanent removal of Jordan from Monroe or the five contiguous counties without Court Order.
On May 4, 2005 Mother filed the instant modification petition seeking permission to relocate to the Atlanta, Georgia area. The petition was subsequently amended to request that in the event relocation was denied, the Court modify Father's physical residency portion of the current Order, while maintaining primary physical residency with her. Father opposes Mother's relocation from the area and seeks primary physical residency of Jordan if she chooses to relocate. The Court, having found both personal and subject matter jurisdiction, conducted a fact finding proceeding and finds as follows. FINDINGS OF FACT
Since birth, Jordan has lived primarily with Mother while Father has enjoyed liberal access to him as arranged between the parties. Initially contact occurred at Mother's home. Later, as Jordan matured, it occurred outside her home. Parents' residency sharing arrangement worked well until 2003 when Mother sought an Order of custody and visitation. According to Mother, after she filed a petition in this Court for child support, Father kept Jordan three to four weeks without her agreement and denied her access to the child.
Mother, Jordan's primary financial support, works full time as an assessment counselor earning $24,000 per year. Pursuant to this Court's Order, she is entitled to receive child support in the amount of $136 bi-weekly (this amount includes arrears). Father, however, pays only infrequently (by wage deduction) when he's employed as a substitute teacher. During summer vacations, although Father works full time he does not pay support for Jordan on that income.
Mother is also entitled to receive 54% of Jordan's day care expenses and uncovered medical/dental expenses, but with the exception of two payments for child care in four years, Father has failed to comply. He is obligated to maintain health insurance for Jordan, but does so sporadically, which adds to Mother's financial difficulties. Father is also obligated to pay child support in the amount of $232 biweekly for another biological child who resides in Maryland with his mother, but likewise, he pays infrequently.
Because Mother struggles to make ends meet, she has been on Public Assistance for short periods of time, receives a day care subsidy for Jordan, and relies on financial and other assistance from her family members.
Mother has resided for the past five years in the same residence, a rental located in the Northeast section of Rochester. Mother's household consists of 4 children whom she also supports financially. Because Mother's street is in a high crime neighborhood prevalent with drug activity and violence, Mother does not allow her children out of the home without adult supervision. (The Court takes judicial notice that within the last 30 days the local news media has reported the occurrence of two separate violent crimes in Mother's neighborhood one a double homicide and arson at 84 Jerold Street, and on an adjoining street, a youth gang killed an adult bicycle rider.)
Until approximately 18 months ago, Mother enjoyed the considerable emotional, financial, child care and other support of her mother and sisters. Della W. (hereinafter [*3]"Maternal Grandmother"), the family's matriarch, and Mother's sister have both successfully relocated to the Atlanta, Georgia area. Another sister plans to relocate there this summer. Once she relocates, Mother will have no familial support system in Rochester as she is not particularly close to her brother who resides in this area.
Mother's family, including her cousins, live in close proximity to each other in the Atlanta area where they mutually support each other. The family in Atlanta have all expressed willingness to assist Mother and Jordan should they be allowed to relocate. Maternal Grandmother relocated to the Atlanta area because she also lived in a high crime area of Rochester. Her relocation was supported by family members who, as noted, are prepared to do the same for Mother and Jordan.
Maternal Grandmother testified that her lifestyle in suburban Atlanta has improved from what it was in Rochester, in that, although still on a fixed income, her limited funds stretch further. She is now living in a safer neighborhood in higher quality subsidized housing. She testified of her willingness to assist Mother financially, with child care and with transportation, as she has done in the past in Rochester. The evening child care that she plans to provide will enable Mother to pursue a college degree, something she has not been able to do Rochester.
Mother has visited the Atlanta area several times to search out opportunities there. She testified to a wide open job market in her career field, many job openings, affordable subsidized housing in the safe suburban area where Maternal Grandmother currently resides, and schools that are better rated than the Rochester ones where Mother's children now attend or will attend. Mother says she seeks to relocate to provide a better life for herself and her three children.
 Currently living on a financial precipice, Mother dreads the unexpected bill which will push her over the edge. Father's infrequent financial support and failure to adhere to the attendance requirements at Jordan's day care center, periodically causes the loss of Mother's subsidy which adds to her financial woes. His failure to maintain consistent health insurance coverage results in delayed medical and dental services for Jordan. Instead of being part of the solution to Mother's financial difficulties, he is part of the problem.
Certain of his behaviors, moreover, are often unsettling to Mother's emotional health. In August, 2004, for example, he "lent" her $15 to buy groceries, then insisted she sign a promissory note. His repeated deviation, at will, from complying with Jordan's physical residency Order as well as day-care requirements are both disruptive and upsetting for Mother. Since March of this year, although Mother has repeatedly asked him to provide her with a medical insurance card, he has continuously failed to do so. While Father feels free to deviate from the Order when it suits him, he refused to let Mother take Jordan to visit her family on Thanksgiving last year because it was his scheduled holiday.
Moreover, on several occasions Father has been verbally abusive toward Mother calling her offensive names, sometimes in front of Jordan and his half-siblings. On one occasion during a residency exchange an incident occurred where Father became physical with Mother, Jordan bumped his head on a table, the police were called and a one-year Order of Protection was issued against Father. Hostility between Mother and Father has reached the point where now they hardly speak to each other.
[*4]
Mother, a single parent of three children, is doing a remarkable job of raising Jordan and his two half-siblings under extremely challenging conditions. Mother clearly is well-bonded to Jordan and advises the Court that she will not relocate if it means giving up primary physical residence of Jordan. Unfortunately, as one of the working poor, she clearly has fewer options to remedy her current unfavorable situation than those with greater financial means.
Father resides in his mother's home and contributes to household expenses. He has a large family in Rochester which often gets together at that home. Paternal grandmother provides back-up child care for Jordan. Clearly Father and Jordan are also well-bonded to each other and enjoy spending time together. He buys him clothes and other items. Father's other son enjoys spending time with the family in Rochester when he is on school breaks and during summer vacations.
 Jordan's law guardian recommends that the Court approve Mother's relocation and grant her sole custody of Jordan with liberal phone contact and long periods of visitation for Father.
It should also be noted that Father changed attorneys mid-way through the trial.
CONCLUSIONS OF LAW
 Although Father argues that this case falls under In the Matter of Sara P. v. Richard T., as a modification of custody between equal custodial caretakers, the facts do not bear that out. 175 Misc 2d 988; 670 NYS2d 964. The current Order grants primary physical residence to Mother with Father held liable for support. The child has resided primarily with Mother and his step-siblings since birth. This case falls under Tropea v. Tropea, 87 NY2d 727 (1996) in which the Court of Appeals set forth the standards and factors to consider when addressing the issue of a custodial parents' relocation with the child.
The standard under Tropea is "best interest of the child" which Petitioner/Mother must prove by a preponderance of the evidence. Supra, at 739. To ascertain best interest the Court must look at influential factors specific to the child. Tropea does give insight by listing such factors as the reason for the move, the relationship between the parents, the good faith of the parents relative to the move, the child's relationship with his extended family, the type of relationship the child has had with the non-custodial parent, the impact on the child if relocation causes a loss of contact with the non-custodial parent, and the possibility of establishing a meaningful visitation schedule. Supra, at 740. This Court has considered these and other factors, such as the child's current living situation in a dangerous neighborhood, and finds that it is in the child's best interest to grant relocation.
While initially the relationship between the parents was cordial and workable it has since disintegrated to the point where they now rarely speak to each other. As noted above, there have been instances of Father's verbal abuse, nettlesome behaviors and the issuance of an Order of Protection against him. Based on this and other evidence the Court finds that a joint custody arrangement is no longer appropriate, and therefore, grants sole custody to Mother.
[*5]
Father argues that Mother has not acted in good faith in that she gave him no notice of the relocation and did not discuss it with him prior to filing the petition. However, Father's behavior demonstrates that he does not want to be held to that same standard. The current Order sets a visitation schedule and "additional visitation... as th[e parties] mutually agree." Inherent in that type of Order is the understanding that some discussion will occur in order for the parties to come to agreement. The evidence shows that Father routinely keeps the child past his visitation time or removes him from day care at will without letting Mother know or discussing it with her.
Morever, Father has not acted in good faith in regards to his financial support of the child. While he has been court-ordered to provide a set amount of child support, medical insurance and a percentage of day care expenses, he has chosen, for the most part, to ignore these requirements and make his own decisions on what he will or will not provide as it pertains to Jordan's needs.
Father argues that Mother's move is based on "wishful thinking" and that she has no assurance of a stable income once she gets to Georgia. It is ironic that Father is demanding assurance that Mother's financial situation will improve upon her relocation in light of his own employment history and housing situation and the fact that the precariousness of her current financial circumstances is due in large measure to his own actions. The evidence shows that the likelihood of Mother securing comparable or better employment in the Atlanta, Georgia area is high and when coupled with the considerable family support she will enjoy there, the likelihood of improved financial and emotional well-being is even higher.
The issue of extended family plays a significant role in this case. As a single parent of modest means, Mother has had to depend on extended family for the type of support usually provided by the other parent. While there is evidence that Jordan enjoys a good relationship with his paternal relatives, it is noteworthy that there is no evidence presented that Father's extended family is willing to offer to Mother or Jordan, the same level of support they receive from maternal relatives. Unfortunately, Mother's reliable support network is, or soon will be, outside this area. Her only choice then is to either follow the people she knows will support her or stay and hope that Father becomes dependable in the future. This Court agrees that Mother is making the correct choice.
Jordan's physical safety is another significant factor in this case. Because of Mother's financial situation, she is limited in her choice of local housing. Father argues that Mother has no proof that she will be able to find better housing in Georgia. Mother's "proof" is that her relatives have already done so and there appears to be no reason why she will not be able to do the same.
One of the most important factors to consider under Tropea is the type of relationship the child currently has with the non-custodial parent and what effect relocation will have on that relationship. Boyer v. Boyer, 281 AD2d 953, 722 NYS2d 322 (4th Dept. 2001). There is no doubt that Jordan and his father have a strong relationship and that Father is very active in his life, thanks in no small part to Mother honoring her part of the custody agreement. Based on past performance, the Court has no doubt that she will continue to encourage that relationship and honor any court-ordered visitation schedule regardless of where she resides.
[*6] It seems that Father's approach to parenting Jordan is more along the lines of the "fun" parent as opposed to the "responsible" one. Instead of being responsible to pay child support for Jordan's basic living needs such as housing, food, and day care, Father has purchased toys, movies, video games and a television for Jordan's room at Father's house. Father's actions that cause Jordan to miss his pre-school program exemplify Father's tendency to do what is fun over what is necessary. Father's parenting style arguably appears to fit well within the framework of a vacation visitation schedule. In addition there was testimony regarding Jordan's difficulty with transitioning between his parents' homes and with inconsistency of parenting routines. Longer and less frequent visits will help alleviate those problems as well.
<
head>CONCLUSION
On the recommendation of the Law Guardian, this Court finds that Mother has met her burden of proving by a preponderance of the evidence that it would be in Jordan's best interest to relocate to the Atlanta, Georgia area and that Mother should have sole custody of Jordan. The Court further finds that Father shall enjoy long periods of visitation during summer vacation and school breaks and that he shall have liberal telephone contact with Jordan and full access to Jordan's educational and medical records. The Court finds that Father shall provide transportation between Georgia and New York for visits occurring in New York and that Mother will provide transportation to or from Maryland for any visits Jordan may have with Father and his other son in Maryland. Father shall consult with Mother about which way she can transport that would not cause her to lose any time from her employment. The Court finds that Father shall also have access to visitation with Jordan in Georgia, upon reasonable notice to Mother and according to a mutually agreed upon schedule.
THEREFORE, it is
ORDERED, that Mother shall have sole custody of Jordan W.; and it is further
ORDERED, that Mother is granted permission to relocate with Jordan to the Atlanta, Georgia area; and it is further
ORDERED, that Father shall have periods of visitation as follows:
1) Father shall have seven (7) continuous weeks of visitation during the summer vacation. He shall notify Mother no later than April 1st regarding what date the 7-week visitation will start. Jordan shall be returned to Mother no later than one (1) week prior to school's commencement in the fall even if this shortens the 7-week visitation time.
 2) Father shall have visitation during any school break that lasts five (5) days or longer, including weekends.
3) Unless otherwise stated, Father shall return the child no later than 5:00 p.m. on the night before school resumes.
4) On the years Christmas falls on Friday, Saturday, or Sunday, Father shall pick Jordan up at noon on Christmas Day. All other years Father shall pick up Jordan the day after school ends. Jordan is to be returned no later than 5:00 p.m. on New Year's Day.
5) Father shall have liberal access for visitation whenever Jordan is visiting Rochester. [*7]The schedule for such visitation shall be as mutually agreed upon between the parties; and it is further
ORDERED, that any other visitation shall be as mutually agreed upon between the parties, in writing and signed by both parties; and it is further
ORDERED, that Father shall provide transportation for Jordan for visitation occurring in New York and provide transportation to or from visitation occurring in Maryland when he is visiting with his other son. Visits in Maryland shall be scheduled so as not to cause Mother to miss work in order to transport Jordan one way; and it is further
ORDERED, that Mother will make a good faith effort to cooperate with Father as he tries to minimize the transportation costs for visitation; and it is further
ORDERED, that each parent shall have liberal telephone access to Jordan between the hours of 7:00 a.m. to 8:00 p.m. when he is in the care of the other parent; and it is further
ORDERED, that neither parent shall say anything derogatory about the other parent in the presence of Jordan or do anything that would hinder the peaceful exchange of the child for visitation, or allow a third-party to do so; and it is further
ORDERED, that Father shall have full access to all medical, dental, psychological and educational information regarding Jordan from Mother and any service providers; and it is further
ORDERED, that both parents will exchange in writing all contact information regarding Jordan's service providers in both New York and Georgia and that Mother will have full access to any service providers in New York; and it is further
ORDERED, that each parent will immediately notify the other of any emergency while the child is in their care; and it is further
ORDERED, that Father will reimburse Mother for any and all expenses incurred should she have to enforce her custodial rights in a court of law and that court finds that Father has willfully violated Mother's custodial rights or this Order.
Signed this 15th day of May, 2006, at Rochester, New York.
______________________

ANTHONY J. SCIOLINO
Family Court Judge
NOTICE:YOUR WILLFUL FAILURE TO OBEY THIS ORDER
MAY, AFTER COURT HEARING, RESULT IN YOUR
COMMITMENT TO JAIL FOR A TERM NOT TO
EXCEED SIX MONTHS, FOR CONTEMPT OF COURT.