******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# C. D. *v.* R. C.[*]
# (AC 46958)

Alvord, Moll and Clark, Js.

*Syllabus*

The plaintiff father, who had filed an application for child custody and visitation with respect to the parties' minor child, appealed from the trial court's judgment awarding the parties joint legal custody of the child, awarding the defendant mother primary physical custody of the child, and granting the defendant's request for permission to relocate from Connecticut to Virginia with the child. The plaintiff claimed, inter alia, that the court applied improper legal standards in considering the defendant's relocation request. *Held*:

The trial court did not apply inapplicable law in favor of relocation but instead properly applied the best interest of the child standard in considering the defendant's relocation request, as the court repeatedly stated in its memorandum of decision that its references to *Ireland* v. *Ireland* (246 Conn. 413), which is limited to postjudgment relocation cases, were offered in support of its consideration of the family unit as a whole and its factual findings as to the best interest determination.

The trial court also did not assert different legal standards for relocation, as the plaintiff claimed, depending on whether the minor child's parents were married or unmarried, as the court's observations about the parties' circumstances and the fact that they had never been married to each other did not evidence the application of a more lenient standard to an unmarried parent seeking to relocate but, rather, could be read to distinguish postjudgment relocation cases and to pertain to the parties' relationship and its breakdown, especially in light of the court's repeated, proper recitation of the applicable legal standard in its decision.

This court could not conclude that the trial court abused its discretion in permitting the defendant to relocate to Virginia with the minor child, as the court's finding that relocation was in the child's best interest was supported by detailed factual findings, including that the parties' circumstances in Connecticut were not in the child's best interest, relocation would elevate the defendant's career prospects and strengthen her support network, as her mother in Virginia was dedicated to assisting with childcare, and the lower cost of living in Virginia would allow the defendant to better provide for the child, who the court found to be resilient and adaptable, in a spacious home that was a substantial improvement over the modest apartment the defendant and the child shared in Connecticut.

Argued November 12, 2025—officially released January 27, 2026

[*]In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024), we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Procedural History*

Application for custody of the parties' minor child, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Stanley Novack*, judge trial referee, issued a certain order with respect to the minor child; thereafter, the defendant filed a motion seeking permission to relocate with the minor child; subsequently, the case was tried to the court, *Vizcarrondo, J.*; judgment awarding the parties' joint legal custody and permitting the defendant to relocate, from which the plaintiff appealed to this court. *Affirmed*.

*Brandon B. Fontaine*, for the appellant (plaintiff).

*Anthony L. Cenatiempo*, with whom, on the brief, was *Norman A. Roberts II*, for the appellee (defendant).

*Opinion*

ALVORD, J. In this child custody/visitation action, the plaintiff, C. D., appeals from the judgment of the trial court ordering that the defendant, R. C., be permitted to relocate to Virginia with the parties' minor child. On appeal, the plaintiff claims that the court (1) applied improper legal standards in considering the defendant's request to relocate and (2) abused its discretion in conducting its analysis of the child's best interest.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the present appeal. The parties met in 2016 and have one child together, who was born in March, 2017. In 2017, the plaintiff purchased a home in Stamford, where the parties lived together. In June, 2018, after the breakdown of the parties' relationship,

---

[1] The current guardian ad litem, Attorney Lorraine Carcova of Connecticut Legal Services, Inc., filed the following cursory statement with this court: "As guardian ad litem for the minor child in the above referenced case, Attorney Jill Plancher recommended against relocation at the time of trial. As such, and because Attorney Plancher is currently retired from the practice of law, Connecticut Legal Services adopts the brief of the appellant."

the defendant traveled to Virginia with the parties' child and remained there. The defendant filed an application for a temporary restraining order, which was granted as to the defendant but did not extend to the parties' child.

The plaintiff commenced the present child custody/visitation action in August, 2018. In his application, he sought joint legal custody of the minor child, a parenting responsibility plan, and regular parenting time at least three times per week, eight hours each time. The plaintiff also filed an application for an emergency ex parte order of custody, pursuant to which he sought orders requiring that the defendant return the child to Connecticut and granting him visitation three days per week for eight hours each day. The court, *Hon. Stanley Novack*, judge trial referee, issued an order with respect to the ex parte application that required the defendant to "return the minor child to Connecticut" by September 5, 2018, and granted the plaintiff "supervised access to the child temporarily."

On March 4, 2019, the defendant filed a motion seeking permission to relocate with the minor child to Virginia. The plaintiff objected to the motion to relocate. Upon agreement of the parties, Attorney Jill Plancher was appointed as the minor child's guardian ad litem. In August, 2019, the parties stipulated that the plaintiff's parenting time would be unsupervised. The parenting schedule was amended, and the plaintiff had parenting time every other weekend and midweek every Tuesday and on alternating Thursdays.

Trial was held over the course of four dates in March and May, 2023. Both parties testified, along with a neighbor of the plaintiff, the defendant's potential future employer, the child's maternal grandfather, the child's maternal grandmother, and Plancher. The plaintiff submitted proposed orders, in which he requested regular parenting time with the child according to a two week rotating schedule. In week one, the plaintiff would have parenting time overnight on Tuesdays and Thursdays. In week two, the plaintiff would have parenting time

overnight on Tuesdays and from Friday afternoon until Monday morning.

On September 8, 2023, the court, *Vizcarrondo, J.*, issued its memorandum of decision, in which it determined that it was in the best interest of the child to grant the defendant's motion to relocate to Virginia. The court first made the following findings with respect to each party. The plaintiff is employed full time for a land use, surveying, and engineering firm started by his grandfather. In addition to work travel, he also devotes a significant portion of his time to studying for professional certifications, with the expectation that he will inherit the company. The plaintiff's net income in 2022 was approximately $63,515. The child's paternal grandparents live in Greenwich and share a close bond with the child. The plaintiff is engaged, and his fiancée, who has a cordial relationship with the defendant, also is the parent of a child. The plaintiff intends to relocate within the Stamford area and form a household with his fiancée and her child.

The court found that the plaintiff is "not willing to relocate to Virginia, which is understandable for reasons both personal and professional. On the other hand, the plaintiff is not seeking primary custody here in Connecticut. It is his expectation that the defendant will continue as [the child's] primary custodian. Though [the child's] primary residence is with his mother, the plaintiff shares significant parenting time during which he performs routine parenting duties, including school pickups and drop-offs. Nonetheless, the share of parenting duties is not equal, and the defendant has borne the laboring oar of daily and routine parenting. Even if the defendant were to consent to transfer primary physical custody—which she does not—the court is not persuaded that the plaintiff is prepared to assume the role of primary physical custodian."

The court found that the defendant was raised in Virginia and obtained a degree in kinesiology and business from James Madison University. The defendant

is employed at Greenwich Country Day School, and has a net income of approximately $27,900, which is only slightly more than an income supporting a finding of indigency. The defendant lives with the child in a 900 square foot apartment in Stamford, where her monthly rent is $1600, exclusive of utilities. The court found that the defendant lacks a support network in Connecticut, leaving her largely reliant on the plaintiff, and found that she has undergone treatment for depression and anxiety in connection with the uncertainty of this litigation. The court found that the plaintiff has professional and personal obligations that constrain him from committing more time to the child's care. The court found the result of these constraints to be that "the defendant must contend with the difficulties of rearing a child without adequate emotional or logistical support." The court found that the defendant's lack of support has "adversely impacted her employment prospects and has hampered her ability to provide for [the child]." The court further found that, "because she cannot earn more, and because of the high cost of living in Connecticut, she cannot currently afford more than the modest apartment she and [the child] share. . . . Her inability to provide better for [the child], particularly in comparison to his father, is a source of significant stress, disappointment, and bitterness—all of which are contrary to [the child's] best interests."

With respect to the proposed relocation, the court found that the town in Virginia the defendant seeks to relocate to is "picturesque" and that its location near James Madison University provides educational, developmental, and recreational opportunities. The court found that the move will bring the child near to his maternal uncle and grandmother, who purchased a home neighboring her own in which the defendant and the child would live. The court further found that "the proposed relocation will have the tangible effect of strengthening the defendant's childcare network, reducing her potential reliance on costly third-party childcare, and strengthen

(by virtue of proximity and accessibility) [the child's] ties to his extended maternal family."

The court found that the defendant had secured immediate employment in a preschool facility in Virginia, which, although providing a salary commensurate with her earnings in Connecticut, provides for a reasonable expectation of salary increases. The court also noted the lower cost of living in Virginia, which allowed the defendant the ability to afford the expenses related to a three-bedroom home. The court found that the proposed home in Virginia would redress "a detrimental disparity in [the] parents' respective resources that impacts substantially [the child's] best interests."

With respect to the child, the court credited the testimony of the guardian ad litem and found that the child is "articulate for his age and is advanced in all developmental milestones." The child has adjusted well to both of his parents' homes, and the guardian ad litem "found no indicators of distress in either environment." The court found that the child is "resilient and adaptable and will make a successful transition." The court stated: "In the [guardian ad litem's] credible view, [the child] is comfortable in Connecticut, though he can adapt to life elsewhere, including Virginia. The [guardian ad litem's] visit to Harrisonburg [Virginia] confirmed that the proposed living situation there presents a substantial improvement over the defendant's circumstances in Connecticut. [The guardian ad litem] found the Virginia home spacious with an excellent yard and noted that its proximity to the nearby college campus provided ample recreational and developmental opportunities for [the child]. In Virginia, the [the guardian ad litem] observed [the child] enjoying himself—playing and interacting with his maternal grandparents, and his uncle, with whom [the child] also has a loving bond. Nonetheless, the [guardian ad litem's] considered belief is that [the child's] interests are best served by remaining in Connecticut, where he can share equal access to both parents.

Because of its expected impact on the plaintiff's parental relationship, she recommends against relocation."

With respect to the plaintiff, the court found that "he is an excellent father and provider. This court is impressed by his efforts to ensure that [the child] has access to and enjoys enriching opportunities, like his enrollment in multiple sports programs. It is also clear that the plaintiff has availed himself of significant opportunities to bond with his son, playing together and partaking of mutual activities like raising chickens in the backyard. This court is loath to disrupt that relationship, but remedial action is required here, as the court finds that the parental bond between father and son has developed at the defendant's expense. Given her current circumstances, it is not possible for her to provide commensurate opportunities. As mentioned above, although the plaintiff enjoys parenting time raising chickens with [the child] in his spacious backyard, the defendant is rearing [the child] in a cramped apartment in a modest neighborhood where safety is a concern. And while the plaintiff proposes to pay more in child support to address that disparity, the court concludes that any reasonable increase in child support would be insufficient to equalize the advantage in square footage, outdoor play space, proximity to amenities, neighborhood quality, and safety to be gained by relocating to Harrisonburg.

"The imbalance in the current parental dynamic is not in [the child's] best interest. This court declines to enshrine circumstances that promote a binary role where [the child] alternates between life with mother in dour circumstances and idealized life with father. Those circumstances have sown seeds of resentment that should not be permitted to take root."

The court found that the proposed relocation is necessary, in that the present circumstances are not in the child's best interest and are likely to harm him in the long term. Specifically, the court found that the parties' relationship is strained. They had cohabitated for "approximately six months when the relationship

devolved under claims of domestic violence." The court found that, "[u]nder the circumstances, the defendant is quite reasonable in her desire to begin a new life outside of Connecticut. Here, she holds few significant ties beyond the obligation to raise her son, and she is doing so largely without a robust support network of her own. Given the circumstances, denying the defendant the opportunity to relocate is tantamount to a legal tether, in that she performs the lion's share of daily, routine parental duties in service of maintaining the plaintiff's parental privileges. . . . The adverse psychological effect on the defendant is obvious, and the resulting impact on her relationship with [the child] is reasonably foreseeable." (Citation omitted.)

Finally, the court made the following findings with respect to mitigating the adverse effects of the relocation: "This court has weighed the impact of the defendant's relocation on the quantity and quality of [the child's] future contact with his father and with his paternal family, whom he loves. Car travel between Stamford and Harrisonburg requires at least six hours of travel or more, and it would be foolhardy to suggest that that distance will not impact the frequency of [the child's] contact with his father or the [paternal] family. But courts have frequently approved relocations involving greater distances, and distance alone is no reason why the plaintiff cannot enjoy quality parenting time or why [the child's] bond with his paternal family should not continue to flourish. First, tecĀology continues to improve the ability for interactive contact between family members over significant distances. The court's order will require both parties to adopt such tecĀology for this purpose. Second, this court proposes to grant the plaintiff routine parenting access whenever possible. The court will also balance responsibility for transporting [the child] and encourage the parties to use flexibility, common sense, and cooperation to maximize the amount and quality of the plaintiff's parenting time. Successful visitation access in Virginia is feasible. . . . This court finds that, despite past difficulty, the plaintiff's access

to [the child] in Virginia will be greatly improved by both the termination of acrimonious litigation and the move to the new three-bedroom home in Harrisonburg. There, the defendant has assured this court that the plaintiff will be welcome, and the availability of an extra bedroom dispels any suggestion that his visits will require the plaintiff to visit with [the child] in expensive and unwelcoming hotel rooms. Further, the court's orders will allow the plaintiff to exercise substantial parenting time in Connecticut, including most [of the child's] summer vacation, as well as multiple holiday weekends, the next several Christmas holidays, and other substantial periods sufficient to ensure that [the child] maintains contact with the plaintiff and his Connecticut family, including his loving paternal grandparents with whom he has always enjoyed a close bond."

In its orders, the court awarded the parties' joint legal custody. The court awarded the defendant primary physical custody and permitted her to relocate to Virginia with the child. The court ordered the parties to establish a video communication schedule, such that the plaintiff may communicate with the child at least three times during the workweek, at least once during the weekend, and in connection with special occasions. The court ordered that the defendant would have similar access during the plaintiff's parenting time. The court ordered that the plaintiff would have parenting time in Connecticut on three long weekends during the school year; spring breaks; alternating Thanksgiving breaks; and the next three Christmas breaks, with alternating Christmas breaks thereafter. With respect to parenting time in Virginia, the court ordered: "Upon agreement of the parties, not to be unreasonably withheld, the plaintiff shall have flexible access to visit the child in Virginia upon reasonable notice (i.e., ten days in advance), including exercising parenting time during any holiday weekend. Weekend parenting time in Virginia will commence Friday after school, through Sunday evening at 8 p.m. The plaintiff shall be permitted, though not required, to lodge in the defendant's Harrisonburg home to facilitate

the plaintiff's parenting time. During the plaintiff's parenting time, the defendant shall make all reasonable effort to provide the plaintiff with exclusive use of the home during daytime hours, so as not to unreasonably interfere with the plaintiff's parenting time."

This appeal followed. The plaintiff filed a motion requesting that the trial court stay the relocation orders during the pendency of the appeal, which was denied. The plaintiff filed a motion for review of the trial court's denial of the stay with this court, which granted the motion for review but denied the relief requested therein.

I

The plaintiff's first claim on appeal is that the trial court improperly "utilized inapplicable law in favor of relocation and took the view that the law had shifted considerably more in favor of relocation in recent years, and . . . asserted two different standards for relocation depending on whether parents are married or unmarried." We consider in turn each aspect of the plaintiff's claim.

We first set forth our standard of review. "The question of whether the court applied the correct legal standard is a question of law subject to plenary review." *J. Y.* v. *M. R.*, 215 Conn. App. 648, 665, 283 A.3d 520 (2022). Resolving the plaintiff's claim also requires us to construe the court's orders. "[O]ur deferential standard of review [in domestic relations cases] . . . does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal. . . . Moreover, [t]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary." (Internal quotation marks omitted.) Id., 664. "[A]n opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012). Furthermore, "if it is not otherwise clear from the record that an improper

standard was applied, the appellant's claim will fail on the basis of inadequate support in the record." **(**Internal quotation marks omitted.**)** Id.

We first address the plaintiff's claim that the court improperly applied a presumption in favor of relocation. The following legal background is relevant: "In *Ireland* v. *Ireland*, 246 Conn. 413, 414–15, 717 A.2d 676 (1998), our Supreme Court addressed the issue of a *custodial parent* seeking permission to relocate out of state with a minor child. In its decision, our Supreme Court held that a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that **(**1**)** the relocation is for a legitimate purpose, and **(**2**)** the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child. . . . The court also set forth factors that must be considered in determining the best interests of the child in future relocation cases." **(**Citation omitted; emphasis in original; internal quotation marks omitted.**)** *N. R.* v. *M. P.*, 227 Conn. App. 698, 717–18, 323 A.3d 1142 **(**2024**)**.

"In *Ford* v. *Ford*, 68 Conn. App. 173, 176, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002), this court addressed the question of whether *Ireland* applies to relocation issues that arise when the initial custody determination is made . . . . In concluding that *Ireland* does not extend to such situations, we held that *Ireland* is limited to postjudgment relocation cases. We conclude[d] that because the *Ireland* court did not expand its holding to affect all relocation matters, relocation issues that arise at the initial judgment for the dissolution of marriage continue to be governed by the standard of the best interest of the child as set forth in **[**General Statutes**]** §46b-56. While the *Ireland* factors *may be considered* as best interest factors and give guidance to the trial court, *they are not mandatory or exclusive in*

*the judgment context.*" **(**Emphasis in original; internal quotation marks omitted.**)** *N. R.* v. *M. P.*, supra, 227 Conn. App. 718–19.

"Our legislature adopted the factors set forth by our Supreme Court in *Ireland* and enacted No. 06-168 of the 2006 Public Acts, codified at [General Statutes] § 46b-56d, which is limited to any proceeding before the Superior Court arising *after the entry of a judgment awarding custody of a minor child . . . .*" **(**Emphasis in original; internal quotation marks omitted.**)** Id., 718. In addition to codifying the *Ireland* factors,[2] § 46b-56d **(**a**)** removed the burden shifting scheme set out in *Ireland*. See *Lederle* v. *Spivey*, 113 Conn. App. 177, 187, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 **(**2009**)**. Section 46b-56d **(**a**)** provides: "In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that **(**1**)** the relocation is for a legitimate purpose, **(**2**)** the proposed location is reasonable in light of such purpose, and **(**3**)** the relocation is in the best interests of the child."

Section 46b-56 **(**a**)**, which governs relocation issues that arise at the entry of a judgment awarding custody, provides in relevant part that "the court may make or modify any proper order regarding the custody, care,

---

[2] General Statutes § 46b-56d (b) provides: "In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements."

education, visitation and support of the children if it has jurisdiction . . . ." Subsection (b) of § 46b-56 provides in relevant part that a trial court, in crafting such orders, shall consider "the rights and responsibilities of both parents . . . and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ." Section 46b-56 (c) requires the trial court, when making or modifying an order as provided in subsections (a) and (b), to "consider the best interests of the child" and enumerates seventeen factors.[3] Subsection (c) further

[3]The seventeen enumerated factors are: "(1) The physical and emotional safety of the child; (2) the temperament and developmental needs of the child; (3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; (13) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background; (15) the effect on the child of the actions of an abuser, if any domestic violence, as defined in section 46b-1, has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (17) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b." General Statutes § 46b-56 (c).

provides that "[t]he court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision."

In its recitation of the legal standard, the court first explained that it was "assessing whether relocation is in [the child's] best interests" and stated that it "must consider all relevant factors enumerated in . . . § 46b-56 (c)." It also stated that it had considered *Ireland*, noting that our Supreme Court had "adopted additional relocation factors from New York jurisprudence," and it set forth those factors. The court recognized that the *Ireland* factors are limited to postjudgment relocation cases but stated that the "factors may nonetheless be considered for guidance as 'best interest' factors when making an initial custody determination . . . ." Finally, the court recognized that § 46b-56d (a) imposes an evidentiary burden on the relocating parent in a postjudgment relocation case to prove by a preponderance of the evidence that "(1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child." The court noted that such evidentiary burden is not applicable in the present case, citing *Lederle* v. *Spivey*, supra, 113 Conn. App. 177.

At the outset of the court's discussion, it stated that it had "considered all relevant factors set out in . . . § 46b-56 (c), as well as those factors discussed in *Ireland*, *Tropea* [v. *Tropea*, 87 N.Y.2d 727, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996)],[4] and § 46b-56d. The court has given each factor appropriate weight based on the evidence but has been guided ultimately by [the child's] best interests. Having done so, this court finds that it is

---

[4] "To determine the best interest of the child in a postjudgment relocation matter, our Supreme Court in *Ireland* adopted the factors as enumerated by the New York Court of Appeals in *Tropea* v. *Tropea,* [supra, 87 N.Y.2d 727]." *Ford* v. *Ford*, supra, 68 Conn. App. 178.

in his best interest to relocate with his mother to Harrisonburg, Virginia." **(**Footnote added.**)**

The court then briefly set forth a historical discussion of views on relocation, both pre- and post-*Ireland*, and described in passing what it identified as a shift away from the discouraging of relocation of custodial parents. It remarked, inter alia, that "Connecticut and other jurisdictions now expressly allow for the likelihood that a custodial parent's good faith decision to relocate *is* in the best interests of the child."(Emphasis in original.**)** The court next engaged in an extensive analysis of the proposed relocation, the need for relocation, and ways to mitigate any adverse effects of the relocation. The court set forth detailed factual findings in support of its conclusion that the proposed relocation is in the best interest of the child, as set forth previously in this opinion. Finally, the court prefaced its orders by stating, "[h]aving considered all the evidence, and all the appropriate factors set forth in . . . § 46b-56 (c), it is the finding of this court that the best interests of the minor [child] are served by the following orders."

Reading the court's decision as a whole, we conclude that it did not use inapplicable law in favor of relocation. Although the court's decision contained references to *Ireland*, the court repeatedly expressed its legal determination that *Ireland* was not controlling but, rather, that the court was guided by the best interest of the child standard. See *In re Denzel W.*, 225 Conn. App. 354, 377–78, 315 A.3d 346 (rejecting claim that court improperly shifted burden to respondent where, despite use of imprecise language, court applied proper standard), cert. denied, 349 Conn. 918, 317 A.3d 1 (2024). The challenged language, quotations from *Ireland*, were offered in support of the court's factual findings that support its best interest determination, as set forth in more detail in part II of this opinion; see *In re M. S.*, 226 Conn. App. 857, 869, 319 A.3d 833 (court's remarks that referenced different legal standard did not necessitate conclusion that court improperly applied that standard,

where court set forth the relevant legal standard on more than one occasion and made findings in support of relevant legal standard), cert. denied, 349 Conn. 920, 320 A.3d 978 (2024); and we do not view the court's analysis as deviating from the neutral best interest standard.

Moreover, we view the court's discussion as incorporating considerations of the family unit as a whole, including the economic and emotional impact of the proposed relocation. Our Supreme Court recently has reiterated that "a trial court's analysis concerning relocation may [take] into consideration the interests of the new family unit as a whole [because such an analysis] is consistent with the best interests of the child standard. In fact . . . an attempt to determine what is best for the child without consideration of what is best for the family unit, with whom the child spends the most significant amount of his or her time, would be an incomplete inquiry." (Internal quotation marks omitted.) *K. S.* v. *R. S.*, 350 Conn. 692, 744, 326 A.3d 187 (2024). Moreover, § 46b-56d (b) permits the court to consider "the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation." Having considered the challenged portion of the court's decision within the context of the court's overall analysis; see, e.g., *In re James O.*, 322 Conn. 636, 654, 142 A.3d 1147 (2016); we conclude that the court did not use inapplicable law in favor of relocation.

We reach the same conclusion with respect to the plaintiff's contention that the court "asserted two different standards for relocation depending on whether parents are married or unmarried."[5] The plaintiff emphasizes remarks the court made during the guardian ad litem's testimony. Specifically, the court distinguished the present case from postjudgment relocation cases,

[5] Because we conclude that the trial court did not improperly assert two different standards in its decision, we need not reach the plaintiff's contention that such an assertion would violate due process and equal protection principles.

stating: "This is not a relocation case under the law because *we are not postjudgment*. In a relocation case, you understand that there is an expectation . . . given the fact that there *was* a marriage and presumably a marital home had been established. And there is a presumption that the expectations of the parties, as a family unit, should be disrupted as little as possible, unless there are compelling reasons, and *there we have the relocation standard.*" (Emphasis added.) The court continued: "In this case, the parties were never married. There was no expectation set. And so, given the fact that I've heard you testify [to] that factor, which is the length of time the child has lived in a stable and satisfactory environment, and the desirability of maintaining continuity in such environment is not a compelling factor for you, given [the child's] adaptability. I'm wondering why there is a preference for [the plaintiff] over [the defendant], given the fact that they were not a married unit and that expectation does not exist."

After these prefatory comments, the court inquired of the guardian ad litem "[w]hy there's a preference for [the plaintiff] to maintain the continuity of the Stamford location, in proximity to his family, and to allow the continuity of his employment, where the converse of that seems not to be given equivalent weight in your determinations."[6]

The plaintiff maintains that the court "overtly expressed this opinion of the law in such a way that it should be presumed to have been applied by it in the final decision, even if not expressed there." The plaintiff goes on to maintain, however, that the court reinforced that same principle in its memorandum of decision. Specifi-

[6]The trial court continued: "[G]iven the fact that this is a custody case, originating out of . . . nonmarried parties, where that expectation doesn't exist, if that factor is not compelling, then how do we distinguish whose preference here—[b]ecause it seems to me that, the suggestion is that [the defendant], in order to see her son, has no option but to effectively become—for lack of a better term—I'll put it terribly—stuck in Connecticut against her will."

cally, he points to the following passage: "The court does not believe its concerns [regarding the imbalance in the current parental dynamic and resentment felt by the defendant] are hyperbole. The credible evidence is that the parties' relationship, though respectful, is strained. These are young people that were never married. Indeed, at the time [the child] was conceived, they had not contemplated or intended on forming a life together. *Unlike a dissolution of marriage, there was no underlying presumption that these two people would form a family unit or that it would be located in Connecticut.* The parties cohabitated for approximately six months when the relationship devolved under claims of domestic violence. This court does not purport to reach the merits of that claim, and there is no serious suggestion that [the child's] health and safety is at risk from either parent; nonetheless, the underlying relationship between the parties is not only practically nonexistent but is marred by a significant history of acrimony." (Emphasis added.)

We are not persuaded that the trial court's observations evidence its application of a more lenient standard to an unmarried parent seeking to relocate. Rather, read in context, these intermittent comments offered during the course of trial can be read as seeking to distinguish postjudgment relocation cases. Moreover, the challenged finding within its memorandum of decision, when considered within the full passage, pertains to the parties' relationship and that relationship's breakdown. We do not read the comments to show that the trial court applied a different standard, especially in light of the court's proper recitation of the applicable legal standard numerous times throughout its decision. Moreover, we are reminded that, "if it is not otherwise clear from the record that an improper standard was applied, the appellant's claim will fail on the basis of inadequate support in the record." (Internal quotation marks omitted.) *In re*

*Jason R.*, supra, 306 Conn. 453. Accordingly, we reject the plaintiff's claim.

II

The plaintiff's second claim on appeal is that the trial court abused its discretion in permitting the defendant to relocate with the parties' child. We are not persuaded.

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 113 Conn. App. 185. "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal. . . . As has often been explained, the foundation for [our deferential] standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Citation omitted; internal quotation marks omitted.) *N. R.* v. *M. P.*, supra, 227 Conn. App. 713.

Moreover, "[t]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of direction can

warrant our interference." (Internal quotation marks omitted.) *Zhou* v. *Zhang*, 334 Conn. 601, 632–33, 223 A.3d 775 (2020).

The plaintiff contends that the court considered improper factors or placed undue weight on them. He argues that the court "should not have penalized the plaintiff for his strong bond with his child," and asserts that the court did so by making unfair findings regarding the imbalance in the current parental dynamic and that the parental bond between the plaintiff and the child had developed at the defendant's expense; the court's finding that the child's current circumstances were "likely to harm him in the long term" was unsupported by any evidence because "it was clear that the defendant had been successful at insulating [the child] from any detriment"; the court's findings regarding the defendant's current circumstances, including that she lives "in a modest neighborhood where safety is a concern," were erroneous;[7] the court could have addressed its concerns by the defendant relocating in Connecticut, or by awarding greater child support to keep the defendant in the Stamford area; relocation to Virginia provided almost no financial benefit;[8] the court's finding that the child

[7] We note that the defendant testified as follows regarding the differences between her current living situation in Stamford and the proposed home in Virginia:

"[The Defendant]: We would have a . . . home in a good neighborhood versus our 900 square foot two-bedroom apartment for $100 more a month.

"[The Plaintiff's Counsel]: Do you believe that it's in [the child's] current best interest to have the two-bedroom or the home that you just described to live in in Virginia as opposed to being able to see his father every week?

"[The Defendant]: Well, I don't think the situation is ideal any way you cut it, but I do think it is in [the child's] best interest to have a home with a yard in a good school district, in a safe neighborhood for him to grow up in, yes."

[8] The defendant testified that "the mortgage payment for the [Virginia] home that I would . . . own at some point is less than the rent that I pay currently and in my income restricted apartment." Moreover, the court found that, "[t]hough the anticipated salary [in Virginia] is roughly commensurate with her Connecticut earnings, it is sufficient to meet her anticipated expenses. Moreover, there is a reasonable expectation of

deserved to grow up with a yard was already met during the plaintiff's parenting time in Connecticut; the court improperly placed emphasis on the defendant's family in Virginia; and the court supported its orders "with a visitation schedule in Virginia that is inconsistent with its findings and that would be unworkable," including permitting visitation within the defendant's home. (Internal quotation marks omitted.) The plaintiff urges this court to conclude, "[b]ased on any of these reasons, or any combination of them . . . that the court erred or abused its discretion . . . ."

We reiterate that the trial court is accorded the authority to exercise judicial discretion under § 46b-56, and "[n]othing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Coleman* v. *Bembridge*, 207 Conn. App. 28, 54, 263 A.3d 403 (2021). We have no such conviction in this case. The trial court found that it was in the best interest of the child to relocate with the defendant to Virginia and supported that determination with detailed factual findings regarding the best interest of the child. Specifically, the court explained that it carefully had considered the defendant's proposal and found that the proposed relocation would address concerns, including the defendant's lack of a support network and the high cost of living in Connecticut preventing her from affording more than the modest apartment she shares with the child. The court found that the proposed relocation would allow the defendant to provide better for the child, given the lower cost of living in Virginia and would strengthen the defendant's support network, which, in turn, would elevate the defendant's career prospects. The court found that the proposed home presented a substantial improvement over the child's present standard of living, including its sizeable yard and proximity

salary increases. Even working for similar wages, the court is satisfied that the defendant will be better able to provide for [the child] given Virginia's lower cost of living, as demonstrated by her ability to pay similar housing costs for a three-bedroom home."

to his maternal grandmother, who the court found was dedicated to assisting the defendant with childcare. The court found that the child is resilient and adaptable, and noted the child's comfort in Virginia as has been shown during his frequent trips there. The court found that the parties' current circumstances were not in the child's best interest noted the defendant's difficulty in raising the child without a robust support network. The court found that the resulting impact on her relationship with the child was reasonably foreseeable. Finally, the court weighed the impact of the relocation on the quantity and quality of the child's contact with the plaintiff and the paternal family and attempted to mitigate the adverse effects of the relocation by ensuring that the plaintiff would exercise substantial parenting time in Connecticut. The court also found that successful visitation in Virginia is feasible. In light of the record before the court, we cannot conclude that the relocation order constituted an abuse of its discretion. See *Lederle* v. *Spivey*, supra, 113 Conn. App. 190.

The judgment is affirmed.

In this opinion the other judges concurred.